63 P.3d 164 (2003)
115 Wash.App. 563
In re MARRIAGE OF Mary Beth HOSETH, Appellant, and
James Hoseth, Respondent.
No. 20729-3-III.
Court of Appeals of Washington, Division 3, Panel Five.
February 11, 2003.
*166 Mary E. Schultz, Attorney at Law, Spokane, WA, for Appellant.
Julie A. Harrington, Attorney at Law, Spokane, WA, for Respondent.
*165 BROWN, C.J.[1]
A superior court commissioner granted James Hoseth's motion to modify the parenting plan for his son with Mary Beth Hoseth/Zemke, James's former wife and the residential parent. The superior court denied Mary Beth's revision motion. Mary Beth appeals contending the superior court erred in its application of the minor modification provisions of RCW 26.09.260(5). After interpreting the statute for the first time, we affirm.

FACTS
James and Mary Beth married in February 1994. Cody was born in September 1994. The parties separated in 1996. In July 1996, they agreed to a parenting plan drafted by Mary Beth's attorney. The plan granted James very little visitation time with Cody (every Tuesday, from 9:00 a.m. to 3:00 p.m., and four holidays on even years). Mary Beth's attorney was unsuccessful in suggesting that James consult an attorney. James later claimed he could not afford to hire counsel. The Spokane County Superior Court approved the 1996 parenting plan. No issue of parental misconduct exists.
In September 1996, James hired an attorney who filed a CR 60(b) motion to vacate the decree of dissolution, parenting plan, and order of child support, in which James alleged generally "what happened in this particular instance was unbelievably unfair." Clerk's Papers (CP) at 25. In early 1997, a superior court commissioner vacated the 1996 parenting plan and ordered more liberal visitation. In June 1997, the superior court reversed the commissioner's order on revision, reinstating the 1996 plan.
In August 1997, James filed a petition to modify the custody decree/parenting plan. He proposed, among other things, a new visitation schedule allowing him 24 days visitation per year. Mary Beth opposed the motion, arguing there was no change in circumstances as required by statute.
The superior court granted the motion to modify and entered a new parenting plan (1997 plan). The 1997 plan anticipated Cody starting school, allowed for 2 overnights per month, up to two partial days per month, and 4 "float" overnights usable solely during summer vacation. CP at 140. The plan awarded Mary Beth most holidays. Easter, Thanksgiving, Christmas Eve, and Christmas Day would alternate. James would get Cody on Father's Day. Cody would spend all of his birthdays with Mary Beth. James would provide all transportation, but Mary Beth retained an option of picking up Cody when scheduling was convenient.
By 2001, Cody's parents were fighting over visitation. James claimed Mary Beth eased up on visitation starting in 1999, thus allowing James much more time with Cody than permitted under the plan. Then, according to James, Mary Beth stopped the informal visitation when he suggested a joint modification recognizing the more liberal visitation. Mary Beth denied the claim of liberal visitation and asserted James was erratic and unreliable under the terms of the plan.
On May 30, 2001, James filed a petition, later amended, for modification of the custody decree/parenting plan. James requested increased visitation not to exceed 90 overnight visits per year. James alleged a substantial change in circumstance because (1) *167 he had moved from Idaho to Spokane, (2) Cody was older, (3) Mary Beth had allowed James visiting time well beyond the terms of the plan and then revoked it, and (4) the current schedule did not allow a reasonable amount of contact.
A superior court commissioner granted the petition and approved the proposed parenting plan (2001 plan). A superior court judge denied Mary Beth's motion to revise the ruling. Mary Beth appealed the order denying revision. A commissioner of this court ruled the matter appealable of right.

ANALYSIS

A. RCW 26.09.260(5)
The issue is whether the superior court erred in denying the motion to revise the commissioner's order allowing modification of the 1997 parenting plan and, under the circumstances, considering the matter as a minor modification pursuant to RCW 26.09.260(5). We reiterate the key circumstances. The 1996 parenting plan granted James very little visitation time even though his conduct was not at issue. The 1997 plan extended visitation to approximately 24 overnights. The 2001 plan allowed approximately 65 to 75 overnights. Mary Beth mainly argues the 2001 modification should not have been allowed as a minor modification under RCW 26.09.260(5).
We review a superior court's rulings with respect to a parenting plan for abuse of discretion. In re Marriage of Littlefield, 133 Wash.2d 39, 46, 940 P.2d 1362 (1997). An abuse of discretion occurs when the superior court's ruling is manifestly unreasonable or its ruling is based on untenable grounds or untenable reasons. Id. at 46-47, 940 P.2d 1362. With respect to modification of parenting plans, the procedures and criteria set forth in RCW 26.09.260 limit the superior court's range of discretion. In re Marriage of Shryock, 76 Wash.App. 848, 852, 888 P.2d 750 (1995). Accordingly, a superior court will abuse its discretion if it fails to base its modification ruling on the statutory criteria. Id.
Here, the superior court granted an adjustment or "minor modification" of the parenting plan under RCW 26.09.260(5) enacted in 2000. Laws of 2000, ch. 21 § 19. Accordingly, whether the superior court abused its discretion in applying the statute turns on the meaning of RCW 26.09.260(5), a question of law we review de novo. See In re Marriage of Hansen, 81 Wash.App. 494, 498, 914 P.2d 799 (1996). In interpreting a statute, we strive to ascertain the Legislature's intent. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002). Absent ambiguity, we derive the plain meaning of the statute "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Id. at 11, 43 P.3d 4.
No recorded opinion has interpreted RCW 26.09.260(5), which partly states:
The court may order adjustments to the residential aspects of a parenting plan upon a showing of a substantial change in circumstances of either parent or of the child, and without consideration of the factors set forth in subsection (2) of this section, if the proposed modification is only a minor modification in the residential schedule that does not change the residence the child is scheduled to reside in the majority of the time and:
(a) Does not exceed twenty-four full days in a calendar year; or
(b) Is based on a change of residence of the parent with whom the child does not reside the majority of the time or an involuntary change in work schedule by a parent which makes the residential schedule in the parenting plan impractical to follow; or
(c) Does not result in a schedule that exceeds ninety overnights per year in total, if the court finds that, at the time the petition for modification is filed, the decree of dissolution or parenting plan does not provide reasonable time with the parent with whom the child does not reside a majority of the time, and further, the court finds that it is in the best interests of the child to increase residential time with the *168 parent in excess of the residential time period in (a) of this subsection.
Under the plain wording of RCW 26.09.260(5), the superior court may order an adjustment to the parenting plan if the petitioning parent shows (1) a substantial change in circumstances, and (2) the proposed adjustment meets at least one of the three criteria set forth in subsections (a) (24 full days), (b) (change of residence or work schedule resulting in impracticality), or (c) (90 overnights, lack of reasonable time, and best interests of child).
Neither the commissioner nor the revision court addressed directly the threshold substantial change requirement, a matter we necessarily consider now. A superior court may modify a custody decree if it finds a substantial change of circumstances grounded upon facts occurring since entry of the prior decree or plan or were unknown to the superior court at the time it entered that prior decree or plan. RCW 26.09.260(1); Drury v. Tabares, 97 Wash.App. 860, 863, 987 P.2d 659 (1999); Hansen, 81 Wash.App. at 500, 914 P.2d 799. Mary Beth contends Hansen holds that a child's entry into school is not a substantial change in circumstances because it is necessarily anticipated.
Mary Beth reads Hansen too broadly. In Hansen, this court reasoned the child's entry into school was not a substantial change of circumstances because the superior court had actually considered such entry at the time it entered the original parenting plan. Hansen, 81 Wash.App. at 499-500, 914 P.2d 799. "[T]he plan refers to the school district calendar in establishing the parenting schedule. Thus, there is substantial evidence to support the trial court's finding that the parties had anticipated that [the child] would enter school when the plan was originally entered." Id. at 500, 914 P.2d 799.
Hansen does not stand for a bright-line rule that ordinarily anticipated life events will always bar a finding of a substantial change of circumstances. The determinative considerations are whether the facts underlying the substantial change of circumstances existed at the time of entry of the prior or original plan or were unanticipated by the superior court at that time. RCW 26.09.260(1). If the underlying facts did not exist or the prior or original plan did not anticipate the substantial change in circumstances, the superior court may adjust the parenting plan. RCW 26.09.260(5).
The commissioner and the revision court emphasized the passage of time and the events happening since entry of the 1997 plan. First, Cody had just turned 3 when the court entered the 1997 plan. He was more than 7-and-a-half when James filed his 2001 petition. He turned 8 while this appeal was pending. In sum, Cody was a pre-schooler in 1997 and is likely in the second or third grade now. Nevertheless, the 1997 plan roughly anticipated a school schedule. See Hansen, 81 Wash.App. at 500, 914 P.2d 799. No case is cited supporting the proposition that the age of a child alone is a basis for finding a substantial change in circumstances.
The record indicates Cody joined a youth sports league subsequent to entry of the 1997 plan. The plan did not expressly anticipate Cody's entry into extracurricular activities. The superior court did not address this aspect of Cody's childhood development, but entry into extracurricular activities could constitute a substantial change of circumstances under the facts of this case.
The superior court noted James's relocation from Idaho to Washington. The 1997 parenting plan did not address such relocation. Significantly, both the original and 1997 plans required James to provide all transportation for visitation purposes even though he lived in Idaho. One of James's complaints in connection with the 1997 plan was that while he resided in Idaho much of his non-overnight visitation consisted of shuttling Cody back and forth from Mary Beth's home. James's relocation to Spokane was a changed circumstance from the situation in 1997, making increased visitation more practical and beneficial to Cody.
James's new domestic partner was a new factor for the superior court to consider even though this was not a substantial change for Mary Beth because she had remarried before entry of the 1997 plan. See Hansen, 81 Wash.App. at 500, 914 P.2d 799. The prior *169 plan did not address James's subsequent involvement with a new domestic partner. James asserts the new relationship provides a more inviting environment for Cody to spend residential time with his father. Moreover, the commissioner noted a new domestic partner was certain to have an impact on Cody. The impact of this circumstance was for the court to consider within its broad discretion. In any event, James's new domestic situation could be characterized as a substantial change.
Finally, the superior court expressed concern over the parents' renewed battle over the parenting plan. The court declined to find Mary Beth had allowed James liberal visitation outside the terms of the 1997 plan. But the court noted the existence of the dispute and reasoned such conflict is, "on its face, not healthy for a seven-year-old child." CP at 312. While not strictly a change in circumstance, the dispute reflects the parties' unhappiness with the current situation. The superior court's reasoning is likely pointed at the best interests of the child, a matter discussed below.
In summary, two major facts indicate a substantial change in circumstances, James's relocation, and his involvement with a new domestic partner. Another fact largely overlooked is Cody's more recent involvement in extracurricular activities. Accordingly, James met the substantial change threshold of RCW 26.09.260(5).
Next, we consider whether James demonstrated one or more of the three additional circumstances set forth under RCW 26.09.260(5)(a) through (c). The first circumstance, a plan not exceeding 24 full days per year does not apply. RCW 26.09.260(5)(a).
The second circumstance justifying an adjustment is partly based on the nonresidential parent's "change of residence ... which makes the residential schedule in the parenting plan impractical to follow." RCW 26.09.260(5)(b); see also In re Marriage of Flynn, 94 Wash.App. 185, 192-93, 972 P.2d 500 (1999) (discussing an earlier version of RCW 26.09.260). James has shown the first part of that test, change of residence. Although he has not established the move made the 1997 plan impractical, we consider the move to Spokane a proper factor for the court to consider in terms of a circumstance that enhances access for the benefit of both the child and the visiting parent. Cumulatively, this circumstance bears on the best interests of the child, more fully discussed below.
The commissioner's oral ruling indicates he relied principally on the third circumstance, a plan not exceeding 90 overnights per year, lack of reasonable visitation time, and the best interests of the child. RCW 26.09.260(5)(c). The 2001 plan did not exceed the 90-day maximum, resulting in about 65 to 75 overnight visits.
Regarding reasonable time, the commissioner examined the 1997 parenting plan and criticized it as "not an easy plan to follow." CP at 313. "It was a week-by-week look. No two weeks were the same each month, as near as I can tell." CP at 313. The commissioner noted with disapproval "there is no expanded time in the summer for vacations. Extraordinary. Extraordinary. I don't know that I've seen that in a plan without restrictions." CP at 313. "The current plan appears to give dad as few as twenty-four to twenty-five overnights a year, which is less than a third of what I would consider to be an average plan." CP at 314.
Mary Beth, noting RCW 26.09.260(5)(c) permits a maximum of 90 overnights per year, takes issue with the commissioner's statements that he considers 90 overnights to be standard. She misconstrues the commissioner's reasoning. The commissioner referred to 90 overnights as a standard for purposes of calculating child support. In other words, the commissioner reasoned a standard, traditional, parenting plan would allow 90 overnights. The commissioner was not referring specifically to adjustments under RCW 26.09.260(5)(c), but rather parenting plans in general. Mary Beth's argument on this point is unpersuasive.
In any event, the commissioner made very clear he considered the visitation allowed under the 1997 plan to be unreasonable given James was under no conduct restrictions. The record contains substantial evidence in support of that conclusion.
*170 Finally, the commissioner addressed, albeit somewhat indirectly, whether modification would be in the best interests of Cody. The commissioner noted the ongoing dispute over expanding visitation was certain to have an adverse impact. The commissioner further noted the obvious impact of James's new domestic partner. And the commissioner noted with some irony that Mary Beth complained earlier James sometimes would not take advantage of his available visitation. The commissioner reasoned increased visitation time would strengthen the bond between Cody and his father. The commissioner envisioned the modified plan would lead to smooth relations between the former spouses and their child. Mary Beth has not asserted in her briefing that the 2001 plan would not be in the best interests of Cody.
In light of the foregoing, the commissioner did not abuse his discretion in ordering an adjustment pursuant to RCW 26.09.260(5)(c). And the superior court did not err in denying revision.

B. Attorney Fees
Both sides demand attorney fees. Mary Beth also demands CR 11 sanctions. Mary Beth requests attorney fees under RCW 26.09.140 and RAP 18.1(d). We have discretion to award attorney fees to the prevailing party after considering the financial resources of both parties. RCW 26.09.140; RAP 18.1(a), (d). A party relying on RCW 26.09.140 "must make a showing of need and of the other's ability to pay fees in order to prevail." Kirshenbaum v. Kirshenbaum, 84 Wash.App. 798, 808, 929 P.2d 1204 (1997) (citing Konzen v. Konzen, 103 Wash.2d 470, 693 P.2d 97 (1985)). A party relying on a financial need theory for recovery of attorney fees must submit an affidavit of need "no later than 10 days prior to the time set for oral argument." RAP 18.1(c).
Mary Beth has not made the necessary showing. See Kirshenbaum, 84 Wash.App. at 808, 929 P.2d 1204 (denying fee request). James devotes a portion of his brief to attorney fees. RAP 18.1(b). But he cites no applicable authority justifying such an award. RAP 18.1(a). Accordingly, James is not entitled to fees. See In re Marriage of Coyle, 61 Wash.App. 653, 665, 811 P.2d 244 (1991).
Affirmed.
WE CONCUR: SCHULTHEIS and KURTZ, JJ.
NOTES
[1] For ease of reference, this memorandum will cite the parties' first names. No disrespect is intended.