FILED
COURT OF APPEALS
DIVISION II

2015 JAN 27 AM 8: 50

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IN RE MARRIAGE OF | No. 45273-1-II |
| JESSICA EMILY MATTSON (formerly known as STALKER), | |
| Respondent, | |
| v. | |
| NICHOLAS DAVID STALKER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Nicholas David Stalker appeals the trial court's order granting a minor modification of the parties' parenting plan. He argues that the trial court abused its discretion in finding a substantial change in circumstances and in finding that Jessica Emily Mattson's work schedule change from part time to full time was involuntary, making the parenting plan impractical to follow. Holding that the trial court did not abuse its discretion because Mattson presented sufficient evidence of a substantial change in circumstances, we affirm.[1]

---

[1] Stalker does not assign error to the finding of fact that the modification did not exceed 24 full days in a calendar year. We consider unchallenged findings as verities on appeal. *In re Marriage of Fiorito*, 112 Wn. App. 657, 665, 50 P.3d 298 (2002).

FACTS

Stalker and Mattson are the parents of two children: N.S. and R.S.[2] On July 28, 2009, the trial court entered an agreed final parenting plan for the two children as part of the parent's dissolution action. At the time, Mattson worked part time (2.5 days a week) for the Puyallup School District (the District) as a high school American Sign Language (ASL) teacher. The parenting plan stated that the children would reside with Stalker from Friday 7:00 PM to Sunday 7:00 PM the first, second, and third weekends of the month and every Tuesday from 4:30 PM to Wednesday 9:00 AM. The children were to reside with Mattson at all other times.

For the school year 2011-12, Mattson's work hours increased to 80 percent of full time. Starting in the school year 2012-2013, Mattson's work hours were scheduled to increase to full time. On August 20, 2012, when N.S. and R.S. were then ages nine and seven, Mattson petitioned the trial court to modify the 2009 parenting plan. In her petition, she asserted that the schedule was not working because it did not allow her sufficient quality time with her children. She had remarried and had another child, then aged one year old. She requested that the trial court modify the schedule to give Stalker visitation Thursday from 7:00 PM through Sunday evening at 7:00 PM every other week (rather than Friday evening through Sunday evening) and keep the current overnight visitation every week from Tuesday 4:30 PM to Wednesday 9:00 AM.[3]

At trial, Mattson testified that the 2009 parenting plan was not working "very well." Verbatim Report of Proceedings (VRP) at 24. She explained that she did not have any quality

---

[2] We use the minor children's initials to maintain confidentiality and we mean no disrespect.
[3] On September 24, 2012, the trial court commissioner found adequate cause to hear Mattson's petition.

time with the two children because their time at her home was taken up with homework and housework before bedtime at 8:00 PM. Because she only had the children on the fourth weekend of the month, her weekend would often be overridden by Stalker's residential time on superseding holidays and the children's birthdays that occurred at the end of the month. This meant that Mattson would not have a weekend with the children for up to seven consecutive weeks, leaving her without quality family time with them. Mattson also claimed that the children lacked structure at Stalker's home and that they would return from his home having not completed their homework.

When Mattson began working as a part-time ASL teacher, she did not intend to become a full-time employee. For the school year 2012-2013, according to the District's contract with her, she became a full-time employee and also began to advise a student ASL club for a stipend. She worked five days a week from 7:10 AM to 4:00 PM and sometimes late into the evening. Mattson testified that if she had refused to work more hours, the District would have been required to try to transfer her. Because only three other schools in the district offered ASL, the District would likely not have had a job available for her and thus she would have ended up unemployed. She considered the change in her work schedule to be involuntary.

Stalker testified that he assumed Mattson's initial decision to work part time was a "foot in the door" to "work her way up" to a full-time position. VRP at 62. His testimony focused on his time spent with the children, which included playing video games, going to the park, watching movies, eating candy, and bonding. At his house, the children rarely had homework to do. He did not have the same quality time with the children on Thursday evenings as he did on weekends when the children were with him.

The trial court found three substantial changes in circumstances:

3

(1) [Mattson] moved from part time to full time employment.
(2) [Mattson] remarried.
(3) [Mattson] has another child/sibling of the children.

Clerk's Papers (CP) at 39. The trial court also found that Mattson's change in work schedule was involuntary, making the parenting plan impractical to follow, and that Mattson's proposed change did not exceed 24 full days in a calendar year. Because of Mattson's full-time work schedule, combined with her remarriage and new child, the 2009 parenting plan made it "impractical for her to have any quality time with [the children] during the week." VRP at 98. The trial court commented that it could not find case law on whether a new sibling constitutes a substantial change, but stated that there was "no question" that "common sense indicates that having a new sibling is a substantial change." VRP at 98. Based on these findings, the trial court entered an order granting Mattson's proposed modification under both RCW 26.09.260(5)(a) and (b) and entered a final modified parenting plan on August 9, 2013.[4] Stalker appeals.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's order granting a minor modification of a parenting plan for abuse of discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012), *cert. denied*, 133

---

[4] We note that the August 9, 2013 parenting plan contains two errors: First, the parenting plan grants Stalker residential custody from Friday 7:00 PM to Sunday 7:00 PM every other week. According to Mattson's proposed plan and her brief, the 2013 plan should grant Stalker Thursday 7:00 PM to Sunday 7:00 PM every other week. The record does not suggest that Mattson ever revised her July 2013 proposal to exclude the Thursday overnight. Stalker indicates that this is a scrivener's error. Second, the August 9, 2013 order references a "July 24, 2013" order, but the referenced order was actually entered on July 23, 2013. CP at 41.

S. Ct. 889 (2013). An abuse of discretion occurs when the trial court's ruling is manifestly unreasonable or based on untenable grounds or untenable reasons. *Katare*, 175 Wn.2d at 35.

## II. MINOR MODIFICATION OF PARENTING PLAN

The trial court's range of discretion in granting a minor modification of a parenting plan is bounded by the criteria in RCW 26.09.260(5). *See In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). RCW 26.09.260(5) provides that a court may modify a parenting plan if the petitioner shows: (1) "[A] substantial change in circumstances of either parent or of the child," and (2) the change either (a) does not exceed 24 full days in a calendar year, or (b) is based on a parent's involuntary work schedule change that makes the parenting plan "impractical to follow."

Stalker argues that the trial court abused its discretion when it granted Mattson's minor modification of the 2009 parenting plan because Mattson did not provide evidence that the changes in her life were "substantial" or evidence that her work schedule change made the 2009 parenting plan impractical to follow. [5] Br. of Appellant at 18. Mattson argues that the record supports the trial court's finding of substantial changes in circumstances and that the modified schedule did not change the number of overnights for either parent. [6] We agree with Mattson.

---

[5] Stalker argues that Mattson did not testify about the effect of her remarriage, birth of a new child, and work schedule change has on the children. Stalker's argument overlooks RCW 26.09.260(5); that statute requires the petitioner to show a substantial change of circumstance in the life of either the petitioning parent *or* the children.

[6] Mattson's argument, that the trial court did not abuse its discretion in modifying the parenting plan because the change did not impact the number of overnights for each parent, does not find support in RCW 26.09.260(5), which refers to "full calendar days" and not overnights.

A "substantial change in circumstances" is a fact that is unknown to the trial court at the time it entered the original parenting plan or an unanticipated fact that arises after entry of the original plan. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 105, 74 P.3d 692 (2003) (holding that father's relocation was anticipated because the parenting plan detailed three different plans that differed depending on the parents' residential proximity); *In re Marriage of Hoseth*, 115 Wn. App. 563, 572-73, 63 P.3d 164 (2003) (holding that the father's relocation from Idaho to Washington and his new domestic partner were unanticipated changes because the parenting plan did not address these issues). A substantial change must be a "bona fide change in circumstances." *In re Marriage of Pape*, 139 Wn.2d 694, 716, 989 P.2d 1120 (1999). The burden is on the petitioner at trial to demonstrate a substantial change in circumstances. *Pape*, 139 Wn.2d at 716. "[I]t is in the trial court's broad discretion to determine whether [a] change should be characterized as substantial." *Tomsovic*, 118 Wn. App. at 106 (citing *Hoseth*, 115 Wn. App. at 572).

We will not second-guess a trial court's reasonable rationale for determining that a petitioner has demonstrated a substantial change in circumstances. Here, the trial court reasoned that Mattson had presented evidence of a substantial change in circumstances when the totality of a change in work schedule from part time to full time, remarriage, and birth of a new child were considered in relation to each other. The trial court heard testimony about the impact these changes had on Mattson.

According to the trial court, "common sense" indicated that a new child was a substantial change because Mattson's time with N.S. and R.S. was further divided by a new child.[7] VRP at

---

[7] We also note that siblings need to spend quality time together as a family and under the 2009 plan they could not do so because Mattson was awarded so few weekends with N.S. and R.S.

98. A change of employment may be a substantial change in circumstances. *Pape*, 139 Wn.2d at 716 (listing a change in employment as an example of a "bona fide change in circumstances"). Remarriage may also be a substantial change in circumstances. *Hoseth*, 115 Wn. App. at 572. Under Mattson's proposed modified parenting plan, each parent would have residential time every other weekend. Stalker would additionally have visitation on Thursday evenings. Given these reasons, the trial court's decision to modify the parenting plan was not unreasonable or based on untenable grounds. *Katare*, 175 Wn.2d at 35. The trial court did not abuse its discretion in finding a substantial change in circumstances under these facts.

## ATTORNEY FEES

Mattson requests attorney fees under RAP 18.9, arguing that this appeal is frivolous. Alternatively, Mattson requests attorney fees under RCW 26.09.140.

RAP 18.9 allows an appellate court to sanction a party who files a frivolous appeal. *Lutz Title, Inc. v. Krerch*, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). An appeal is frivolous if, based on the entire record, the appellant presents "'no debatable issues upon which reasonable minds might differ, and [that the appeal] is so totally devoid of merit that there is no possibility of reversal.'" *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 241, 119 P.3d 325 (2005) (quoting *Green River Cmty. Coll., Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986)). An appeal is not frivolous simply because the appellant's arguments are rejected and all doubts should be resolved in favor of the appellant. *Tiffany*, 155 Wn.2d at 241. Stalker presented debatable issues and his appeal is not frivolous.

RCW 26.09.140 allows the appellate court, in its discretion and based upon the "financial resources" of the parties, to order a party to pay the attorney fees of the other party in cases

No. 45273-1-II

governed by chapter 26.09 RCW. Mattson's financial declaration showed that she shared household expenses with another working adult. She also did not include Stalker's monthly child support payment to her. Her financial declaration failed to prove financial need. Therefore, we deny her request for attorney fees under RCW 26.09.140.

We affirm. The trial court did not abuse its discretion in finding a substantial change in circumstances.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Worswick, P.J.

Lee, J.

8