IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 78587-7-I |
| TYLER ZIMMERMAN, | |
| Appellant, | DIVISION ONE |
| and | |
| | UNPUBLISHED OPINION |
| LESLIE SWANSON ZIMMERMAN, | |
| Respondent. | FILED: July 22, 2019 |

CHUN, J. — Tyler Zimmerman petitioned to modify the parenting plan for his three children with his former wife, Leslie Zimmerman.[1] A commissioner denied his petition. Tyler sought revision of this ruling. The trial court denied his revision motion. On appeal, Tyler contends the trial court erred in finding he did not establish a substantial change in circumstances to warrant eliminating a provision in the parenting plan granting him residential time only when present in Washington. Because the trial court did not abuse its discretion, we affirm.

BACKGROUND

Tyler and Leslie are the parents of three minor children. On October 17, 2014, the trial court entered a final agreed parenting plan for the children as part of the parents' marital dissolution. At the time, Tyler worked in Alaska for extended periods. When not in Alaska, Tyler lived in Skagit County with his

---

[1] For clarity, we refer to the parties by their first names. We intend no disrespect.

girlfriend Kristy Solwold, their child together, and Solwold's children from her previous marriage. The parenting plan provides that the children at issue will reside with Tyler during the school year every other weekend and every Tuesday and Wednesday after school for three hours "whenever the father is present in Western Washington." The plan also allots Tyler residential time during winter and spring break when he is present in Western Washington, as well as four uninterrupted weeks during the summer in either Washington or Alaska.

On December 18, 2017, Tyler petitioned for a minor modification of the parenting plan, alleging the current residential schedule "is difficult to follow because one parent's work schedule changed and the change was not by his/her choice." Tyler's proposed modification would eliminate the provision granting him regular residential time only when present in Western Washington, thereby permitting him to designate Solwold to care for his children during his allotted residential time when he is in Alaska.[2] His declaration in support of modification states, in relevant part, the following facts:

> The parenting plan as currently ordered took into consideration my working a significant amount of time in Alaska. Since it's [sic] entry I no longer work as long in Alaska, and my trips up there are relatively random. . . . In addition, I have a long term girlfriend (10 years), and we have grown our family. . . . My children at issue in this case now have a "step mother" they love, and half/"step" siblings.
>
> . . .
>
> (3) The current parenting plan allows the Respondent to restrict my and my families' [sic] time with the children based on my work schedule. In other words, when I am out of town for work, the

---

[2] See In re Marriage of Magnusson, 108 Wn. App. 109, 110-11, 29 P.3d 1256 (2001) (a parent may ordinarily designate family members or other persons to care for the child during the residential time allocated to a parent by a parenting plan).

children do not visit their family in my home. . . . Currently if I leave for work in Alaska, any time that I am gone the Respondent will not allow my girlfriend to pick up our children to have in our (their) residence. The children should be allowed to be with their family as a routine while I am working.

. . .

(4) One of the things that allowing regular visitation would do is make the transition easier and more natural after I get home from working in Alaska. The way the parenting plan is right now, the children can go for months without having any contact with their half sibling, or my girlfriend and her children. As a result, when I get home, it is a massive transition for them to do visitation. . . . The quality of my time suffers from that because for the first couple of weekends at least, they are getting used to the change, instead of having quality time with me.

Leslie opposed Tyler's proposed parenting plan and moved to dismiss his petition. She alleged that Tyler's work schedule had not materially changed since entry of the parenting plan in 2014 and asserted that the children frequently spend time with Tyler's family when he is gone. In response, Tyler submitted a second declaration asserting that he "no longer wish[es] to assign [his] parenting time to Leslie" because she is failing to maintain "an open co-parenting relationship" as promised. Tyler also argued that "a second major change . . . is that we purchased a home that accommodates all of the children comfortably now."

On March 9, 2018, a court commissioner determined there was not adequate cause for a hearing on Tyler's petition to modify because "no substantial change in circumstance exists and all requests were considered at the time of entry of the final parenting plan." The commissioner dismissed the

petition and denied Leslie's request for attorney fees.[3] In her oral ruling, the commissioner stated:

> I think that the proposed parenting plan by [the father's counsel] had the language that: "The father may designate a third-party who's familiar to the children to exercise his residential time" that to me is the problem. The parenting plan is for time between parents, not between girlfriends and so it's really clear to me that he hasn't changed -- he didn't indicate any change in his work other than he said he's more flexible and can be home more, which means he gets to exercise more visitation.
>
> The change in the size of a house, that's not really a substantial change of circumstances.
>
> It seemed real clear to me that everybody knew what the situation was at the time this was litigated and that there is no -- so I don't find any adequate cause.

Tyler moved to revise the commissioner's ruling. On April 5, 2018, the trial court denied Tyler's motion by letter ruling as follows:

> Based on the evidence presented to the Commissioner in the petition for minor modification, I do not find an abuse of discretion or an erroneous application of the law to facts in deciding there was no substantial change in circumstances.

And, on May 23, 2018, the trial court entered an order finding that Tyler "has not shown a substantial change in circumstances to warrant modification of the parenting plan" and denied his motion for revision. Tyler appeals.

## ANALYSIS

### A. Parenting Plan

Tyler argues that the trial court erred in denying his request for a hearing on his petition to modify the parenting plan. "On a revision motion, a trial court

---

[3] The parties agreed to adopt Tyler's request to modify the parenting plan by extending the end time for Tyler's weeknight visitation.

4

reviews a commissioner's ruling de novo based on the evidence and issues presented to the commissioner." In re Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). "Where . . . the [trial court] makes independent findings and conclusions, the order on revision supersedes the commissioner's ruling." In re Guardianship of Knutson, 160 Wn. App. 854, 863, 250 P.3d 1072 (2011). On appeal, we review the superior court's decision, not the commissioner's. Williams, 156 Wn. App. at 27.

There is a strong presumption against modification. In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). "A trial court's . . . adequate cause determination should be overturned only where the trial court has abused its discretion." In re Parentage of Jannot, 149 Wn.2d 123, 128, 65 P.3d 664 (2003).[4] A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

A trial court's authority to modify a parenting plan is strictly controlled by statute. In re Marriage of McDevitt, 181 Wn. App. 765, 769, 326 P.3d 865 (2014). In his petition, Tyler sought a modification based on an allegedly involuntary change in his work schedule. In relevant part, RCW 26.09.260(5) allows the court to:

---

[4] Tyler appears to argue that the issue of whether a particular set of facts constitutes a substantial change in circumstances in the context of adequate cause is at least partially a legal determination to be reviewed de novo. But it is well settled that the trial court, not this court, stands in the best position to determine whether submitted documentary evidence establishes adequate cause for a full hearing on a motion to modify a parenting plan. See Jannot, 149 Wn.2d at 126; In re Marriage of Tomsovic, 118 Wn. App. 96, 104, 74 P.3d 692 (2003); In re Marriage of Kinnan, 131 Wn. App. 738, 749–50, 129 P.3d 807 (2006).

. . . order adjustments to the residential aspects of a parenting plan upon a showing of a substantial change in circumstances of either parent or of the child . . . if the proposed modification is only a minor modification in the residential schedule that does not change the residence the child is scheduled to reside in the majority of the time and . . . [i]s based on a change of residence of the parent with whom the child does not reside the majority of the time or an involuntary change in work schedule by a parent which makes the residential schedule in the parenting plan impractical to follow.

In his motion to revise the commissioner's ruling, however, Tyler sought modification of the limiting provision that restricted his residential time to when he was present in Washington. To modify the nonresidential aspects of a parenting plan, the petitioner must show a substantial change of circumstances of either parent or child, and that the adjustment is in the best interest of the child. RCW 26.09.260(10).

To obtain a hearing on a petition to modify a parenting plan, the petitioner must by affidavit establish adequate cause to alter the existing plan. RCW 26.09.270; In re Marriage of Tomsovic, 118 Wn. App. 96, 104, 74 P.3d 692 (2003). "The primary purpose of the threshold adequate cause requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing." In re Marriage of Adler, 131 Wn. App. 717, 724, 129 P.3d 293 (2006). To establish adequate cause, the petitioner must show a substantial change of circumstances grounded on facts that "have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan." RCW 26.09.260(1); In re Marriage of Parker, 135 Wn. App. 465, 471, 145 P.3d 383 (2006). "The determinative considerations are whether the facts underlying the substantial

6

change of circumstances existed at the time of entry of the prior or original plan or were unanticipated by the [trial] court at that time." In re Marriage of Hoseth, 115 Wn. App. 563, 571, 63 P.3d 164 (2003). A substantial change must be a "bona fide change in circumstances." In re Marriage of Pape, 139 Wn.2d 694, 716, 989 P.2d 1120 (1999). "[I]t is in the trial court's broad discretion to determine whether [a] change should be characterized as substantial." Tomsovic, 118 Wn. App. at 106 (citing Hoseth, 115 Wn. App. at 572).

Tyler asserts that three changed circumstances since entry of the 2014 agreed parenting plan support a finding of adequate cause for a hearing: (1) the frequency and duration of his trips to Alaska, (2) the purchase of a larger house that comfortably accommodates all of the children, and (3) Leslie's failure to maintain the relationship between the children and Tyler's extended family despite her promises to do so. Tyler argues that these changes are substantial because visitation in his home is a "massive transition" for the children and the quality of his time would improve if they had residential time with Solwold and the other children when he is in Alaska. He further argues that the larger home means it is no longer impractical to designate his residential time to Solwold when he is gone.

But when Tyler and Leslie entered into the agreed parenting plan in October 2014, Tyler worked in Alaska for extended periods of time and lived with Solwold, their child together, and Solwold's children when in Washington. These basic facts remained unchanged when Tyler petitioned to modify the parenting

7

plan in December 2017. Tyler still works in Alaska and still lives in the same city with the same people when in Washington. And contrary to Tyler's assertion that his new work schedule causes problems that must be ameliorated by modifying the parenting plan, his own declaration states that he is now "more in control" of his schedule than he was in 2014.

Moreover, Tyler acknowledges that the children typically go through a transition adjustment period of two or three weeks when he returns from Alaska. He does not argue that the length, severity, or duration of this adjustment period has changed since 2014. Rather, he indicates that the adjustment period is not "worth it" when he is home more often but for shorter periods of time. The work schedule Tyler describes is not sufficiently substantial to warrant modifying the parenting plan; nor is his move to a different house in the same city.

Tyler also cites Leslie's non-cooperative behavior as a substantial change in circumstances. He asserts that she fails to facilitate communication with Tyler's family and will allow the children to see them only if she is included. But Leslie disputes Tyler's claims and asserts that the children regularly saw Tyler's extended family. "[T]o overcome the presumption against modification, the moving party must set forth facts and provide supporting evidence—not self-serving or conclusory statements—to establish adequate cause to schedule a hearing on the petition to modify." In re Marriage of MacLaren, __ Wn. App. __, 440 P.3d 1055, 1067 (2019). Tyler did not corroborate his claims with third-party declarations or other evidence that Leslie's behavior had changed substantially

8

since entry of the parenting plan in 2014. Moreover, conflict and lack of cooperation between parents does not generally constitute a substantial change in circumstances unless it directly impacts the welfare of the children. In re Marriage of Stern, 57 Wn. App. 707, 716, 789 P.2d 807 (1990). Based on the evidence submitted in the affidavits, the trial court did not abuse its discretion in concluding Tyler did not demonstrate a substantial change in circumstances.

The cases Tyler relies on to argue that he established a substantial change in circumstances are factually distinguishable. In Hoseth, the court held that the moving party's relocation to a different state and his involvement with a new domestic partner constituted a substantial change in circumstances. 115 Wn. App. at 573. In Parker, the court held that the petitioner established a substantial change in circumstances to lift a restriction barring contact between his children and his girlfriend because the original basis for the restriction–her substance abuse problems–no longer existed. 135 Wn. App. at 471-72. And in Magnusson, the court held that the father's move to a different city necessitated a modification to the alternating residential schedule that allowed him to designate a portion of his residential time to family members as part of regular decision making. 108 Wn. App. at 112-13. Here, in contrast, the original basis for the restriction on Tyler's residential time–his extended absences from Washington–still exists.

Tyler also asserts that the trial court's letter ruling articulated an improper standard of review and adopted the commissioner's faulty rationale in finding no

substantial change in circumstances. Tyler is correct that the standard of review on a motion for revision is de novo, not abuse of discretion. But Tyler concedes that he brought this error to the trial court's attention. And the trial court's subsequent order denying the motion reflects application of the proper standard.[5]

B. Attorney Fees

Leslie requests attorney fees pursuant to RAP 18.1 and RCW 26.09.140 based on her need and Tyler's ability to pay. Alternatively, Leslie requests attorney fees under RAP 18.9 for defending against a frivolous appeal.

This court has the discretion to award attorney fees under RAP 18.1(a) "[i]f applicable law grants to a party the right to recover reasonable attorney fees" and if the party requests the fees as prescribed by RAP 18.1. RCW 26.09.140 allows the appellate court, in its discretion and based on the "financial resources" of the parties, to order a party to pay the attorney fees of the other party in cases governed by chapter 26.09 RCW. In deciding whether to award fees on appeal pursuant to RCW 26.09.140, this court considers the merit of the issues on appeal and the parties' financial resources. In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997). We decline to award fees on this basis. We also note that Leslie did not timely file a financial declaration with this court as required by RAP 18.1(c).

---

[5] In relevant part, the order states as follows: "[H]aving read the records and files herein . . . [t]he court hereby finds the Petitioner has not shown a substantial change in circumstance to warrant modification of the parenting plan." Tyler does not argue that the order applied an improper standard.

RAP 18.9 allows the appellate court to sanction a party who files a frivolous appeal. "An appeal is frivolous if the appellate court is convinced that the appeal presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." In re Marriage of Foley, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). "The fact that an appeal is unsuccessful is not dispositive." Tomsovic, 118 Wn. App. at 110. We decline to award fees on this basis.

Affirmed.

_Chun, J._

WE CONCUR: