**FILED**
**SEPTEMBER 2, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parenting and Support of: | ) ) ) | No. 40018-2-III |
| W.Z.[†] | ) ) | |
| | ) | |
| SHEILA GRUBB, | ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) | |
| and | ) ) | |
| JUSTIN V. ZORNES, | ) ) | |
| Appellant. | ) ) | |

MURPHY, J. — Justin Zornes petitioned for a major modification of an existing

parenting plan. The superior court commissioner determined there was not adequate

cause to hold a full hearing or trial and dismissed the petition. Zornes moved for revision

of the commissioner's ruling. A superior court judge denied the motion for revision,

adopting the commissioner's findings and conclusions.

Zornes appeals, claiming the superior court erred by: (1) denying the motion for

revision of the commissioner's ruling finding there was not adequate cause to hold a full

[†] To protect the privacy interests of the minor child, we use their first and
last name initials throughout the body of this opinion. Gen. Order 2012-1 of Division III,
*In re Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App.
June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_
orddisp&ordnumber=2012_001&div=III.

hearing or trial and dismissing the petition for a major modification of the parenting plan, (2) adopting the findings of the commissioner's oral ruling, and (3) adopting the conclusions of the commissioner that denied adequate cause to hold a full hearing or trial.

We hold there was no error in the finding that there was not adequate cause for a full hearing or trial to modify the parenting plan under RCW 26.09.260(1) and (2), because there was not sufficient evidence to support a substantial change in circumstances.

FACTS

Sheila Grubb petitioned in the Spokane County Superior Court for a parenting plan, residential schedule and/or child support for her minor child, W.Z. The father of W.Z. is Justin Zornes. In May 2020, the superior court entered a final order for a parenting plan, residential schedule, and child support.

On June 9, 2023, Zornes petitioned for a major modification of the parenting plan pursuant to RCW 26.09.260(1) and (2). Zornes identified the reason for the major change to be the child's current living situation being harmful to their physical, mental, or emotional health, and that it would be better for the child if the parenting plan was changed. In the proposed parenting plan, Zornes additionally identified a request for limitations on Grubb under RCW 26.09.191, asserting Grubb had "a long-term emotional or physical problem" that got in the way of her ability to parent, and Grubb "used conflict

in a way that may cause serious damage to the psychological development of [W.Z.]."

Clerk's Papers (CP) 8-9.

Zornes supported his petition primarily with his own declaration. Zornes acknowledged that Grubb petitioned for a domestic violence protection order in 2021, but claimed the allegations of abuse levied against Zornes were investigated by Child Protective Services (CPS) with no findings made, and Grubb was denied a protection order. Zornes declared that in the past three to four years, W.Z. demonstrated concerning issues with power and control over both things and people around him. This behavior, according to Zornes, manifested only when W.Z. was in Grubb's care. Zornes also stated a concern about W.Z.'s interactions with other kids, even when at play. Zornes listed counselors who treated W.Z. since 2021 and made various diagnoses of W.Z.'s conditions. He indicated that W.Z. had five different counselors over a three-year span. Zornes argued that with no medical decision-making authority, he was unable to advocate for W.Z. Zornes also alleged that Grubb was utilizing the current parenting plan to interfere with his relationship with W.Z. He raised concerns about W.Z.'s participation in soccer and track with the allegation that Grubb had removed W.Z. from these activities once she learned that Zornes was volunteering for them. Zornes also claimed Grubb denied Zornes the ability to participate in W.Z.'s involvement with tae kwon do. Zornes further claimed he was unable to volunteer with school activities, again identifying Grubb

as the reason why he was not allowed to do this. Zornes also recounted a trip to Hawaii,

and flight issues, that resulted in W.Z. traveling as an unaccompanied minor. Zornes

listed medical concerns he had for W.Z., with the claim that Grubb interfered with or

impeded medical intervention, while detailing the medical interventions that did occur.

He also believed that W.Z. was more aggressive and emotionally impulsive. Zornes

concluded that W.Z. struggled under the current parenting plan and that Zornes was

"disregarded . . . as I have no say in his education, medical, or extracurricular activities."

CP at 24. Zornes asked that his proposed parenting plan be adopted or, in the alternative,

that the court appoint a guardian ad litem to investigate his concerns prior to an adequate

cause determination.

Zornes also submitted declarations from a friend, Brian Vaagen, and his Zornes's

fiancé, Katie Kelley. Vaagen recounted an instance in which he was picking up his child

from school and noticed a woman "seemingly yelling at or passionately talking to a child

. . . grab[ing] the child by the arm and yank[ing] him towards her with extreme force."

CP at 68. Vaagen stated that he "was not entirely certain the child was [W.Z.]" and had

never before seen Grubb. CP at 68. He reached out to Zornes, who sent a picture of

Grubb, and Vaagen thought this was the woman he had seen. Zornes's fiancé expressed

that W.Z. and her children get along. She also described her observations of W.Z.'s body

language, which she characterized as appearing "sad" and "defeated" when with Grubb

and "excited" when with Zornes. CP at 72.

In a responsive declaration, Grubb requested that Zornes's petition be denied, taking the position that there was no change in circumstances. She noted that, in prior proceedings, which included the involvement of a guardian ad litem, Grubb was found to be the primary caretaker of W.Z., with W.Z. primarily residing with her, and the court ordered that Grubb have sole decision-making. Grubb detailed findings of Zornes's domestic violence that limited his parenting time. She alleged that Zornes's petition was an attempt to create a change in circumstances by alleging that W.Z.'s behavior had changed, while there in fact had been no such behavioral changes. Grubb argued that the only real change was Zornes's "epiphany" regarding challenges W.Z. has had for his entire life, and that W.Z. "has *always* had issues with sensory processing, emotional disruption of childhood, Autism Spectrum Disorder, PTSD [post-traumatic stress disorder] or ADHD [attention-deficit/hyperactivity disorder]." CP at 84-85. Grubb responded to, and countered, each and every point raised by Zornes.

Zornes replied, disputing Grubb's responses, emphasizing that the changes he observed in W.Z.'s behaviors were not related to W.Z.'s sensory issues. Zornes produced an e-mail from W.Z.'s current counselor, who acknowledged that W.Z.'s behavior had been "off" in sessions, with the follow up comment that this may be a result of W.Z.'s perception that school was "too noisy at lunch time," and something was making it hard

5

for W.Z. to focus, but that part of the behavioral issues might simply stem from W.Z. "getting back into the school routine after a break." CP at 213.

A hearing was held before a court commissioner. Counsel for both Zornes and Grubb argued for and against proceeding to a full hearing or trial. The commissioner did not find adequate cause existed to hold a full hearing or trial and dismissed the petition for modification of the parenting plan. The commissioner explained the threshold of evidence to warrant a finding of a substantial change in circumstances and the applicable test for such a finding. They detailed findings within the case's history that included domestic abuse between the parties, with Grubb identified as the victim and Zornes as the person accused of committing domestic violence with a finding after trial. The commissioner detailed that W.Z.'s behavioral issues may be due to a dissolution, and that the conduct was not indicative of a single parent being the cause of the behaviors. The commissioner noted that they had reviewed over 250 pages of medical records, CPS records, and e-mail exchanges, in addition to the briefing and declarations. The commissioner "went through [the] medical records. Every single one of them." Rep. of Proc. (RP) (July 27, 2023) at 25. It was their assessment that the behavior attributed to W.Z. had the appearance of what would be normal for a seven-year-old child diagnosed with adjustment disorder, which can be associated with rebellion and impulsive behavior. The issues raised also had the appearance of being from different perspectives. The

commissioner concluded that "when I'm asked to consider a really significant request and evaluate [if] there is more than a prima facie case of evidence that warrants an adequate cause, couched under the umbrella that there's a recognition that a disruption in continuity in the parenting plan as it's situated, is highly disfavored. It takes much stronger evidence that what I see here." RP (July 27, 2023) at 28. The commissioner found there was not adequate cause to hold a full hearing or trial with the petition being dismissed. The commissioner incorporated their oral ruling in its written order.

Zornes filed a motion to revise the commissioner's ruling. After consideration, the superior court denied the motion for revision and adopted the findings of the commissioner's ruling.[1]

---

[1] The superior court issued a letter ruling that "[t]he Court finds that there was substantial evidence to support the [commissioner's] order and that it was based on the law in Washington regarding motions for modification of parenting plans. Therefore, the Court denies the motion for revision." CP at 381. The superior court applied the incorrect standard of review. *In re Marriage of Lyle*, 199 Wn. App. 629, 632-33, 398 P.3d 1225 (2017). Thereafter, the court issued an order incorporating its oral ruling as findings of fact. However, the court's oral ruling consisted only of the following: "the Court is gonna reserve and will send you out something next week on this decision." RP (Sept. 7, 2023) at 20. Notwithstanding these deficiencies and inconsistencies, the court's written order supersedes any prior oral rulings. *See Pham v. Corbett*, 187 Wn. App. 816, 830-31, 351 P.3d 214 (2015). Because the order lacks relevant findings of fact, we consider the court's order as an outright denial of the motion and an adoption of the commissioner's ruling. *See Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017) (explaining that if the superior court denies revision outright, such a decision constitutes an adoption of the commissioner's decision).

No. 40018-2-III
*In re Parenting & Support of W.Z.*

Zornes appeals.

ANALYSIS

*What needs to be alleged and demonstrated in a petition for a major
modification of a parenting plan*

We review a trial court's determination of adequate cause for a hearing on a

proposed parenting plan modification for abuse of discretion. *See In re Parentage of

Jannot*, 149 Wn.2d 123, 128, 65 P.3d 664 (2003). The procedures and criteria set forth in

RCW 26.09.260 limit the range of discretion. *See In re Marriage of Hoseth*, 115 Wn.

App. 563, 569, 63 P.3d 164 (2003). The court abuses its discretion if it fails to base its

modification ruling on statutory criteria. *Id.*

Once a court enters a parenting plan that is not appealed, the plan can only be

modified pursuant to RCW 26.09.260. *See In re Parentage of Schroeder*, 106 Wn. App.

343, 349, 22 P.3d 1280 (2001). RCW 26.09.260 states what needs to be alleged in a

petition for a major modification and what a petitioner needs to demonstrate to meet

adequate cause. Under RCW 26.09.260(1),

> . . . the court shall not modify a prior custody decree or a parenting
> plan unless it finds, upon the basis of facts that have arisen since
> the prior decree or plan or that were unknown to the court at the time
> of the prior decree or plan, that a substantial change has occurred in
> the circumstances of the child or the nonmoving party and that the
> modification is in the best interest of the child and is necessary to
> serve the best interests of the child.

8

The parenting plan will remain as set unless one of four things occurs:

> (2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:
>> (a) The parents agree to the modification;
>> (b) The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan;
>> (c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child; or
>> (d) The court has found the nonmoving parent in contempt of court at least twice within three years because the parent failed to comply with the residential time provisions in the court-ordered parenting plan, or the parent has been convicted of custodial interference in the first or second degree under RCW 9A.40.060 or [RCW] 9A.40.070.

RCW 26.09.260.

"Custodial changes are viewed as highly disruptive to children, and there is a strong presumption in favor of custodial continuity and against modification." *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). "[W]here the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." *Ridgeview Props. v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the

declared premise." *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). We

review conclusions of law de novo. *See Sunnyside Valley Irr. Dist. v. Dickie*, 149 Wn.2d

873, 880, 73 P.3d 369 (2003).

A party seeking to modify a parenting plan must submit facts showing adequate

cause for the requested modification. *See* RCW 26.09.270. The trial court must deny the

motion without a hearing unless the submitted evidence establishes adequate cause to

schedule a hearing. *See* RCW 26.09.270; *In re Marriage of MacLaren*, 8 Wn. App. 2d

751, 770-71, 440 P.3d 1055 (2019). If adequate cause is found, then the court must set a

hearing to show cause why the modification should not be granted. *See* RCW 26.09.270.

In evaluating whether there is adequate cause, the petitioner must have presented

evidence that would support a modification under RCW 26.09.260. *See McLaren*,

8 Wn. App. 2d at 774.

Zornes challenges the following oral statements made by the commissioner,

claiming these findings are not supported by substantial evidence:

> Again, W.[Z.] has the diagnose [sic] that seems to fit his behavior on
> which he's being treated for, for adjustment disorder with disturbance
> of conduct. Which, of course, behavior, rebellion, impulsivity, those are
> things associated with that particular mental health problem. So when
> I'm asked to consider has there been an increase in behavior? And
> secondly, there's a direct nexus to you, Ms. Grubb, there's a—I don't
> find evidence of that. . . .

> So folks, suffice to say, one, I can find Ms. Grubb, there's evidence at least from an independent source that you are supportive in nature withstanding how you might feel about Mr. Zornes. And that in these situations when W.[Z.]'s present, I can find that you were being supportive of him. That's really important and I'm glad that I'm seeing that individually in those evaluations. . . .
>
> But I don't find evidence of, in any way, Ms. Grubb—and I'm focusing on her and not you because that's what this motion requires—that you are being intentionally or maliciously confrontational in a way that would be unhealthy for W.[Z.] . . .

RP (July 27, 2023) at 30-32.

Zornes also challenges the following conclusions reached by the

commissioner:

> So I am concluding based on the evidence, that I reviewed in the file, that there is no basis to me to find adequate cause today. I have two parents who view how to go about parenting W.[Z.] regarding both of you differently. I think, Ms. Grubb, you've embraced the idea of parallel parenting because of your perspective and what you've gone through. With Mr. Zornes, I don't think you would like to do parallel parenting, that you'd rather do coparenting. And the same as desire. But there's two parties to that circumstance and it takes both to want to have that. The parenting plan is not designed for that.
>
> And the Court has to recognize, as I've said before, Ms. Grubb, that you are a victim of domestic violence, and there's a particular lens associated with that. Different than Mr. Zornes, your lens. And so that, I believe, really identifies what's going on between the parties. But it's not a detrimental environment that warrants adequate cause.
>
> . . . I understand your concerns, but they don't rise to the level from my findings that warrants an adequate cause to change the parenting plan.

11

RP (July 27, 2023) at 32-33.

On appeal, Zornes identified three areas to support his contention that "W.[Z.]'s behavior relating to adjustment disorder with disturbance of contact did increase since the original parenting plan was entered." Br. of Appellant at 8. Zornes argues that (1) he noticed concerning issues manifested by W.Z. with power and control, that Zornes linked to Grubb, as well as counseling records from 2023 that showed W.Z. needed emotional adjustment, the need for family support, the setting of limits and boundaries, and W.Z.'s feeling that he wanted to spend more time with Zornes equal to his time with Grubb; (2) a claimed nexus between W.Z.'s behaviors and Grubb; and (3) the court's focus on Grubb being a victim of domestic violence, which Zornes claimed was error.

It is accurate that behavioral issues were identified in counseling sessions. However, as pointed out by the commissioner, it is normal for a child who is diagnosed with adjustment disorder to have behavioral issues, which includes rebellious and impulsive behaviors. Additionally, as pointed out within the counseling records, parents separating and transitions associated with such relationship changes often result in the manifestation of behavioral adjustments by children. Also, more poignantly, Grubb in her responsive declaration noted that W.Z. "has *always* had issues with sensory processing,

emotional disruption of childhood, Autism Spectrum Disorder, PTSD or ADHD."

CP at 84-85. There have been no changes in circumstances.

The commissioner had the opportunity to observe Zornes and Grubb in person and review their declarations. The commissioner was in a better position to resolve questions of weight and credibility of evidence than this court. *See In re Welfare of Sego*, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973). Grubb's declaration, in and of itself, supports the commissioner's finding that there was not a substantial change in circumstance. The evidence is that W.Z. is a seven-year-old who carries diagnoses that can and do affect behaviors in ways that were raised as concerning by Zornes, but which are normal.[2]

Zornes also argues that the commissioner erred in failing to find a nexus between W.Z.'s behaviors and Grubb, with Zornes asserting that there was no evidence other than Grubb's responsive declaration that would support this finding that there was no nexus. Zornes argues that the weight of the evidence should instead be given to Vaagen's declaration and the incident Vaagen alleged to have occurred between Grubb and W.Z.

---

[2] The provided counseling records are for sessions that occurred after the original parenting plan was entered. However, there is evidence in the record of behavioral treatment that predated the parenting plan. For example, W.Z. had previous treatment for sensory processing issues that addressed cognitive rigidity in 2019, prior to the formation of the original parenting plan. In addition, there is no evidence that W.Z.'s behaviors have substantially changed since the formation of the parenting plan. Rather, the evidence demonstrates consistent behaviors relatives to the ups and downs of childhood.

Again, the commissioner was in a better position to weigh credibility than this court. It was not improper for the commissioner to give more weight to Grubb's declaration than to Vaagen's. Additionally, there was no evidence that, even if the incident as alleged in Vaagen's declaration did occur, that it impacted W.Z.'s behavior. There was no mention of this incident in any of the counseling records, nor were there any links drawn in the counseling records that would support a claim of increased issues with W.Z.'s behaviors and contact with Grubb. Rather, the counseling records document that W.Z.'s behavioral issues stem from W.Z. not following the rules, having problems in school, alleged abuse by Zornes, and a stated desire by W.Z. to want to spend equal time with mom and dad. The counseling records actually verify that Zornes was not sure if there was a nexus between Grubb and W.Z.'s behavior, which is evident through a December 7, 2022, note in which Zornes asked the counselor if W.Z.'s oppositional behavior stemmed from Grubb, and the counselor, in response, suggested that "[Zornes] parent from the perspective of parallel parenting and focus on developing his relationship with [W.Z.]." CP at 755. Further, in e-mails between Zornes and the counselor, the counselor described that it was her belief that part of W.Z.'s behavioral issues may have stemmed simply from W.Z. going back to the school routine after a break, which denotes an issue with a child making a transition, as opposed to a parent being the cause of a behavioral problem.

14

Therefore, it is reasonable that the commissioner found no nexus between Grubb and W.Z.'s behaviors.

Zornes also claims it was error for the commissioner to focus on Grubb being a victim of domestic violence and Zornes the perpetrator, arguing this is not the proper legal inquiry for finding adequate cause under RCW 26.09.260. Here, there was no evidence that there was a substantial change in circumstances. During their oral ruling, the commissioner detailed that the parenting plan was originally structured in recognition of challenges that would be present with contact between Zornes and Grubb in light of Grubb being a victim of domestic violence. Though Zornes argued it was improper for the commissioner to focus on domestic violence, this court has said that an episode of domestic violence, by itself, may support the finding of detriment to a child. *See In re Marriage of Zigler*, 154 Wn. App. 803, 814, 226 P.3d 202 (2010). Children who live in violent homes are "traumatized by the violence and more likely to commit crimes as adults." *Id.* Therefore, it was not improper for the commissioner to focus on the detriment that can be caused by domestic violence.

The commissioner recited information gained through a review of the counseling records and concluded W.Z. loves both parents, and the counseling sessions do not exist as evidence that would support a claim of any detriment to W.Z. being caused by either parent. Lastly, the commissioner concluded that any change to W.Z.'s behavior is not

indicative of a single parent being the cause. The commissioner concluded that there was no detriment to W.Z. that rose to the level of adequate cause.

Under the facts of this case, the evidence submitted by Zornes in support of his petition for a major modification of the parenting plan does not provide sufficient evidence to support a finding of a substantial change in circumstances as required under RCW 29.06.260(1) and (2). Therefore, there was no abuse of discretion in finding that there was not adequate cause to proceed to a full hearing or trial on the petition.

*Denial of motion to revise commissioner's ruling*

A motion to revise a commissioner's ruling is governed by RCW 2.24.050. Here, the superior court on revision did not make findings of fact which is, therefore, considered an outright denial of the motion for revision and adoption of the commissioner's ruling. *See Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). For the reasons given in this opinion, there was no abuse of discretion by the commissioner in the findings made, nor in the conclusions of law that resulted in the determination that there was not adequate cause for a full hearing or trial on the petition for a major modification of the parenting plan.

No. 40018-2-III
*In re Parenting & Support of W.Z.*

## CONCLUSION

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Murphy, J.

WE CONCUR:

_____          _____
Staab, A.C.J.                                                    Cooney, J.