[No. 37992-5-I.   Division One.   January 27, 1997.]

MICHAEL J. KIRSHENBAUM, *Respondent*, v.
JACQUELINE A. KIRSHENBAUM, *Appellant*.

*Philip R. Shucklin* and *Anderson Shucklin & Ellis,* for appellant.

*Michael J. Slish,* for respondent.

COLEMAN, J. — Jacqueline and Michael Kirshenbaum have two sons. In an action to dissolve the Kirshenbaums' marriage, the court established a parental visitation schedule. The dissolution decree and parenting plan vested an arbitrator with authority to make "additions or alterations" to the parenting plan. After the arbitrator conditionally suspended Jacqueline's visitation rights, Michael sought to reduce the decision to a court order. In response to a challenge to the arbitrator's authority, the Superior Court ruled that it includes the power to suspend parental visitation rights. We agree that the parenting plan authorizes the arbitrator to suspend Jacqueline's or Michael's visitation rights. Because the arbitrator's decision to suspend visitation is subject to immediate court

review, we also hold that the court's delegation of this authority was valid under the marriage dissolution act. We therefore affirm the Superior Court judgment.

The Kirshenbaums' two sons, Mikhail and Kory, are now ages eight and six, respectively. In the dissolution proceedings, the court awarded residential care of the children and sole decisionmaking authority to Michael.

The parenting plan established a parental visitation schedule for each day of the year. It incorporated the court's findings that:

> [x] The abusive use of conflict by [Jacqueline] creates the danger of serious damage to the child's psychological development.

> [x] Other: The mother refuses to stop involving the children in the conflicts and believes that they should have the right to know what their father is like. The mother has also created conflicts in front of the children[.]

Although the court found that Jacqueline's conduct had a potentially adverse effect on the children's best interests, it placed no restrictions on her residential time. Instead, the court appointed Dr. Jack Reiter as "joint counselor for the parties concerning all aspects of the parenting plan" and "binding arbitrator," providing that "if there are any disagreements between the parties concerning the implementation of the parenting plan, Dr. Reiter shall make the final binding decision." The court vested Reiter with the power to make "[a]lterations and additions to the parenting plan as may be deemed appropriate[.]" The parenting plan provided a right to have all dispute resolution decisions reviewed by the Superior Court.

After the dissolution decree was entered on October 26, 1994, Michael went to Jacqueline's parents' house to assume custody of the boys. Jacqueline and her parents verbally and physically assaulted both Michael and Elizabeth Stanton, the guardian ad litem. Pursuant to Stanton's recommendation, Reiter temporarily suspended Jac-

queline's visitation rights until he could become actively involved in the case. When Michael and Jacqueline first met with Reiter on November 4, 1994, Reiter terminated this first suspension.

Reiter referred the boys to child psychologist Julia F. Moore, M.D., for psychiatric evaluation and treatment. Moore determined that Mikhail suffered from depression, traumatic stress, adjustment disorder, and bi-polar disorder, which were causing uncontrolled tantrums, sleep deprivation, and anxiety attacks. After unsuccessfully attempting to treat Mikhail with benadryl, Moore prescribed lithium and depakote. Mikhail also suffered from encopresis,[1] for which his primary care physician had recommended mineral oil and dietary changes.

Jacqueline refused to give Mikhail his lithium and mineral oils during her visitation periods. Reiter again suspended Jacqueline's visitation rights. He reinstated Jacqueline's rights three months later when she agreed to go through therapy, give Mikhail his medicine and treatments, and stop sleeping with the boys.

Moore noted a great improvement in Mikhail's mental and physical health during the three months the children had spent exclusively with their father. When Jacqueline's visitation rights were reinstated, however, Mikhail relapsed into his depression, temper tantrums, and frequent soilings. Moore recommended to Reiter that Jacqueline's visitations be supervised. On July 26, 1995, Reiter suspended Jacqueline's visitation rights for a third time, after discovering that Mikhail's lithium levels were low. Reiter also feared that Jacqueline was teaching her children not to trust their father, the doctors, or Stanton. Reiter told Jacqueline that he would reinstate her visitation rights if she agreed to follow the directions of Mikhail's doctors and stop sleeping with the children.

Michael brought this action, requesting an order

---

[1]"Encopresis" is defined as "involuntary defecation of psychic origin." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 747 (1966).

confirming Jacqueline's visitation suspension. Jacqueline filed a counter-motion to reinstate visitation. On September 27, 1995, the Family Law Commissioner Pro Tem. ruled that the parenting plan did not give Reiter the authority to suspend visitation rights, but only the power to recommend alterations. The court reinstated Jacqueline's visitation.

Michael sought revision of this ruling. A judge of the Superior Court set the ruling aside in its entirety, ruling that the terms of the parenting plan authorized Reiter to suspend visitation rights. The court then suspended Jacqueline's visitation until she agreed to give Mikhail his medicine, obtain independent counseling, and stop sleeping with the children. Instead of complying with these conditions, Jacqueline appealed to this court.

We must first determine whether the parenting plan authorizes Reiter to suspend visitation rights without a court order. Jacqueline argues that the court below incorrectly interpreted the parenting plan as delegating the power to suspend visitation. She concedes that Reiter has the power to recommend alterations to the plan but claims that the plan's purpose was to allow for only minor adjustments to accommodate the parties' changing work schedules. Michael argues that Reiter's suspension of visitation is an "alteration" to the parenting plan and thus specifically authorized in plain language. We agree with Michael.

The interpretation of a parenting plan is a question of law. *See Byrne v. Ackerlund,* 108 Wn.2d 445, 455, 739 P.2d 1138 (1987) (interpretation of divorce decree). Where a decree is ambiguous, a reviewing court must ascertain the intention of the court that entered the original decree, using general rules of construction. *Gimlett v. Gimlett,* 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). When determining a decree's intended effect, the appellate court's inquiry is normally limited to the decree's provisions. *Kirk v. Jacobson,* 85 Wn.2d 85, 88, 530 P.2d 643 (1975).

■ The parenting plan specifically states that there would be no restrictions on Jacqueline's residential time because Reiter could make additions or alterations to the parenting plan. Reiter's role is not limited to merely recommending alterations to the court. We reject Jacqueline's argument that visitation suspensions are not within the meaning of the term "alterations." A major portion of the parenting plan is devoted to the parents' visitation schedules. Suspensions of the mother's allotted time alter the parenting plan's visitation schedule.

■ If the court had intended a narrower meaning of the term "alterations," it could have easily provided that Reiter had no power to suspend visitation. Ample evidence supports the theory that the court anticipated future conflicts between Jacqueline and Michael. By vesting a binding arbitrator with power to alter the plan, the court intended to avoid the need for the parties to go to court every time a dispute arose. Under its plain terms, the parenting plan authorizes Reiter to suspend visitation when he determines that it would be in the children's best interest.

We must next decide whether the court may validly delegate the authority to unilaterally suspend parental visitation rights to an arbitrator under the marriage dissolution act. Jacqueline argues that the authority to suspend visitation rights is exclusively reserved to the courts and that its delegation exceeds the court's statutory authority. We agree that the court may not abdicate its ultimate authority to modify parenting plans. However, we hold that the court in this case acted within its discretion by authorizing an arbitrator to suspend visitation rights because the suspended parent has the right of court review.

■■ Trial courts are given broad discretion in matters concerning the welfare of children. *In re Cabalquinto,* 100 Wn.2d 325, 327, 669 P.2d 886 (1983), *appeal after remand,* 43 Wn. App. 518, 718 P.2d 7 (1986). We review the trial court's disposition of parental visitation issues for manifest abuse of discretion. *George v. Helliar,* 62 Wn.

App. 378, 385, 814 P.2d 238 (1991). Abuse of discretion is defined as discretion exercised on untenable grounds or for untenable reasons. *In re Luckey*, 73 Wn. App. 201, 208, 868 P.2d 189 (1994).

Parenting plans normally provide a method for resolving future disputes about the children and establish a residential schedule. *In re Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). RCW 26.09.191(2) requires the court to limit a parent's residential time if it finds a limiting factor such as abandonment or abuse. By contrast, subsection (3) lists a number of limiting factors that allow the court to limit plan provisions in its discretion:

> A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:
>
> . . . .
>
> (e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development;
>
> . . . .
>
> (g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

RCW 26.09.191(3). The trial court expressly relied on this subsection as a basis for appointing an arbitrator with authority to alter the parenting plan.

█ Jacqueline argues that the dispute resolution process was inappropriate because RCW 26.09.187 provides that "[t]he court shall not order a dispute resolution process, except court action, when it finds that any limiting factor under RCW 26.09.191 applies[.]" While the court found that Jacqueline's involvement with the children might potentially have an adverse impact on their best interests, it did not exercise its discretion to place restrictions on her scheduled visitations under RCW 26.09.191(3). As such, no limiting factors were "applied," and the prohi-

bition against dispute resolution in RCW 26.09.187 was not triggered.

Only two discovered Washington cases have involved parenting plans that granted the power of alteration to private parties, but the delegation's validity was not at issue in either case. In *Harrington v. Pailthorp*, 67 Wn. App. 901, 904, 841 P.2d 1258 (1992), *review denied*, 121 Wn.2d 1018, 854 P.2d 41 (1993), this court mentioned without questioning a prior order that the parties submit to "ongoing mediation with a counselor who had the power to alter residential and visitation arrangements in accord with the children's best interests." In *In re Lilly*, 75 Wn. App. 715, 716, 880 P.2d 40 (1994), a temporary parenting plan originally provided that changes of visitation could occur only with the concurrence of therapists, but in a pretrial order, the trial court ruled sua sponte that the plan "violated state law by usurping the power of the court to determine the parenting plan." The court thus "clarified" the decree by stating that the therapists could merely recommend changes in visitation, leaving the ultimate decision to the court. *Lilly*, 75 Wn. App. at 717.

The court's power to delegate visitation suspension authority to an expert is a matter of first impression in Washington, and the validity of such a delegation depends on the marriage dissolution act. Statutory construction is a matter of law that we review de novo. *In re Hansen*, 81 Wn. App. 494, 498, 914 P.2d 799 (1996). One objective of the parenting plan is to "[p]rovide for the child's changing needs as the child grows and matures, in a way that minimizes the need for future modifications[.]" RCW 26.09.184(1)(c); *In re Sheley*, 78 Wn. App. 494, 505, 895 P.2d 850 (1995), *review denied*, 128 Wn.2d 1009, 910 P.2d 481 (1996). In addition, the act encourages dispute resolution to avoid the need for judicial intervention. RCW 26.09.184(3). The parties have a statutory right of review from any dispute resolution process to a superior court. RCW 26.09.184(3)(e).

Nowhere does the act specifically prohibit the ap-

pointment of private practitioners to oversee the performance of a parenting plan or make alterations. To modify the terms of the parenting plan, the court must find a "substantial change in circumstances," even if the modification is minor. RCW 26.09.260 (1), (4). While this statute clearly envisions an independent inquiry by the court before parenting plans can be modified, Reiter's suspension of Jacqueline's visitation rights is not a modification of the plan itself. We agree with Jacqueline that a delegation of authority to permanently terminate visitation rights would be too broad. However, those facts are not presented in this case. Jacqueline's suspension was temporary, lasting only as long as she refused to follow Reiter's conditions. She also had the right to have the court review Reiter's decision. Because the suspended parent can request immediate review of the arbitrator's decision, the court has, in effect, delegated only the power to act in a temporary fashion. The Legislature intended to afford a measure of flexibility in fashioning parenting plans, and no statute forbids the approach taken here.

Courts frequently rely on the recommendations of mental health professionals in fashioning and making alterations to visitation schedules. *See, e.g., Helliar,* 62 Wn. App. at 385. Allowing an appointed counselor's chosen course of action to be effective immediately, rather than awaiting a decision by the court, provides an efficient and flexible solution to disputes and threats to the children's welfare as they arise. Because the court retained the ultimate authority to review Reiter's decisions, it did not abuse its discretion by giving Reiter authority to suspend visitation. While we agree that the court may not delegate the final and binding authority to terminate a parent's visitation rights, we find no improper delegation here. We hold that the court may vest an arbitrator with authority to suspend visitation as long as the parties have the right of court review. Because Reiter was not given the final and binding authority to terminate visitation, we affirm the judgment below.

We deny Michael's request for reasonable at-

torney fees. This appeal is not so frivolous as to warrant sanctions under RAP 18.9, because the issues presented are at least debatable. *See In re Greenlee*, 65 Wn. App. 703, 710, 829 P.2d 1120, *review denied*, 120 Wn.2d 1002 (1992). Nor are attorney fees warranted under the marriage dissolution act. While RCW 26.09.140 authorizes the appellate court to award fees in its discretion, the prevailing party on appeal must make a showing of need and of the other's ability to pay fees in order to prevail. *Konzen v. Konzen*, 103 Wn.2d 470, 693 P.2d 97, *cert. denied*, 473 U.S. 906, 105 S. Ct. 3530, 87 L. Ed. 2d 654 (1985). No such showing has been made.

We affirm.

GROSSE and AGID, JJ., concur.

Reconsideration denied February 28, 1997.