**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| MARK W. BRYAN, | ) | No. 80608-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ALICE H. ARGOSINO, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent. | ) | |
| | ) | |

MANN, C.J. — Mark Bryan appeals the trial court's denial of his motion to revise the court commissioner's order confirming in part and denying in part the arbitration decision clarifying the parenting plan. Bryan contends that the court's denial was an abuse of discretion because the commissioner was bound by deadlines in RCW 7.04A to accept the arbitrator's decision in its entirety without any modification. We disagree and affirm.

I.

Bryan and Alice Argosino met in November 2007 and began residing together in May or June 2008. As a couple, the two lived together for about seven years. Together, they had two daughters, one born in August 2008 and the second in

Citations and pin cites are based on the Westlaw online version of the cited material.

December 2009. Argosino was previously married and has two daughters from her prior marriage. Bryan was previously married and has no other children.

Bryan and Argosino separated in July 2011 after Argosino filed a domestic violence protection order (DVPO). Argosino dropped the order and separated from Bryan for the final time in January 2014. Argosino filed another DVPO on January 2, 2014 and Bryan filed a petition to establish a residential schedule with his children on January 21, 2014. The matter was referred to Family Court Services (FCS) and Bryan was granted a temporary residential schedule at a hearing on February 14, 2014.

On April 19, 2014, FCS issued a risk assessment report that recommended Bryan enroll in and complete a domestic violence offender treatment program and have supervised visits with his children pending completion of the program. On May 12, 2014, the court granted Argosino a DVPO. Further, Argosino is enrolled in the address confidentiality program, which keeps victims of domestic violence addresses confidential.

On December 2, 2014, the parties participated in a settlement conference and reached an agreement on all issues, including the final parenting plan. On January 30, 2015, the court entered a second agreed and amended order modifying the order for protection, which allowed incidental contact between the parties during exchanges of the children, for Bryan to pick up the children from school or daycare, and that Bryan's residential time would be governed by the parenting plan.

Bryan sought clarification of the parenting plan through dispute resolution. On July 31, 2018, the trial court ordered Argosino to participate in an arbitration. In the order, seven issues were identified that needed clarification: educational decisions,

direct communication with the children, communication between Argosino and Bryan, counseling for the children, exchanges of the children, and vacation and holiday schedules.

The following is a summary of the arbitrator's decision relating to each category requiring modification. First, on the issue of education, the arbitrator found that the children were not benefitting from remaining at a lower performing school in the Seattle School District, should transfer to the Shoreline School District, and that the transition would occur in September 2019.

Second, on Bryan's direct communication with the children, the arbitrator found that the children were sufficiently mature to have telephone contact with Bryan and since the children were removed from the DVPO and his residential time was unrestricted, such contact would be consistent with the parenting plan. Further, Bryan would supply a phone for the children to use and the phone would have child controls.

Third, on clarification regarding communication between the parties, the arbitrator found that the parenting plan requires contact between the parties for notification of vacation dates and making joint parenting decisions. Previously, communication went through Bryan's attorney. The arbitrator found there was no basis to compel Bryan to continue to engage his attorney for the benefit of Argosino. The arbitrator found that the parties should use Our Family Wizard, a communication service that would be an efficient and verifiable method for communication.

Fourth, on the children's continued counseling, the arbitrator found that neither child had been assigned to a specific therapist after four years of therapy, that the

decision to place the children in therapy was a joint decision, and that there was no compelling basis on which to keep the children in therapy at Sound Mental Health.

Fifth, on exchanges of the children between the parents, the arbitrator found that Argosino could not assign responsibility to exchange the children to her minor 16-year-old daughter and that non-school exchanges should continue at the North Seattle grocery store where exchanges had previously occurred.

Sixth, on clarifying vacations, the arbitrator found that there was ambiguity in the vacation schedule and clarified that Bryan's weekend residential periods in the summer start on Wednesday at 3:00 p.m. and end Monday at 9:00 a.m. The arbitrator clarified that the summer residential schedule starts when school recesses for the summer, not June 1st. Additionally, the arbitrator clarified that the provision about scheduling two-week vacations could be either two one-week periods or one two-week periods and the days are counted by overnights not by hours.

Finally, on clarifying the holiday schedule, the arbitrator found there was an inconsistency between the settlement agreement and the parenting plan and that the settlement agreement should supersede the parenting plan to reflect that "the children will be exchanged on December 25th at 3:00 pm" because the children split their time with each parent during their winter holiday break.

On March 28, 2019, Bryan submitted the arbitrator's decision to the court for confirmation and with a proposed final order that revised the parenting plan to include the arbitrator's clarifications. Argosino opposed incorporating portions of the arbitration award. Argosino filed a motion to add the children back onto the DVPO.

The court commissioner heard arguments addressing both the request to confirm the arbitrator's decision and to add the children to the DVPO on June 10, 2019. The commissioner confirmed in part and denied in part the arbitration award. The commissioner entered the following findings of fact and conclusions of law:

1) School enrollment; the children are residents of the Seattle School District for the foreseeable future. Only evidence was that Shoreline would not have room.

2) The father shall provide a "simple* phone" which the mother shall preapprove for purposes of direct [communication] with the children, the parties may call the child 1x/day at reasonable times. The children are allowed to make as many calls as they wish. [*Simple meaning no component ability to track, email or other media.]

3) The father shall prepay for Our Family Wizard for one year worth of service – the parties shall limit themselves to 1 message/week. The message shall be limited to 200 words or less.

4) Counseling – For therapy to continue at Seattle Mental Health – the father shall be allowed a meeting with the therapist to discuss therapy issues the children's mental health counselor shall not be used or called upon for testimony in court.

5) Exchanges shall remain unchanged except for one of Argosino's eldest daughters may transport.

6) Vacations – 21 day notice shall be provided – other aspects of the parenting plan shall remain in effect.

Bryan moved for revision of the commissioner's order before a superior court judge. The trial court heard argument and denied Bryan's motion. Bryan appeals.

II.

Bryan contends that the trial court erred when it confirmed in part and denied in part the arbitration decision clarifying the parenting plan because RCW chapter 7.04A required the commissioner to adopt the decision in its entirety.[1] We disagree.

We review a trial court's denial of a motion for revision of a commissioner's order for abuse of discretion, that is, discretion that is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. River House Dev., Inc. v. Integrus Architecture, P.S., 167 Wn. App. 221, 231, 272 P.3d 289 (2012). "Under RCW 2.24.050, the findings and orders of a court commissioner not successfully revised become the orders and findings of the superior court. A revision denial constitutes an adoption of the commissioner's decision, and the court is not required to enter separate findings and conclusions." Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). "On appeal, this court reviews the superior court's ruling, not the commissioner's." Maldonado, 197 Wn. App. at 789.

Here, the parties' final parenting plan and RCW 26.09.184 govern the dispute resolution process. Under RCW 26.09.184(4), a parenting plan must contain provisions for resolving disputes.

> (4) DISPUTE RESOLUTION. A process for resolving disputes, other than court action, shall be provided unless precluded or limited by RCW 26.09.187 or 26.09.191. A dispute resolution process may include counseling, mediation, or arbitration by a specified individual or agency, or court action. In the dispute resolution process:
>
> (a) Preference shall be given to carrying out the parenting plan;

---

[1] Argosino contends that the arbitrator had withdrawn her signature from the decision submitted by Bryan and therefore the decision was never authenticated, and submitting an unauthenticated decision to the trial court violated RCW 7.04A.190(1). Neither the trial court, nor the commissioner made any findings of fact related to the authentication issue, therefore, we do not address it here.

-6-

(b) The parents shall use the designated process to resolve disputes relating to implementation of the plan, except those related to financial support, unless an emergency exists;

(c) A written record shall be prepared of any agreement reached in counseling or mediation and of each arbitration award and shall be provided to each party;

(d) If the court finds that a parent has used or frustrated the dispute resolution process without good reason, the court shall award attorneys' fees and financial sanctions to the prevailing parent;

(e) The parties have the right of review from the dispute resolution process to the superior court.

The parenting plan provided dispute resolution to resolve "disagreements about carrying out this parenting plan.  This dispute resolution process may, and under some local court rules or the provisions of this plan must be used before filing a petition to modify the plan or a motion for contempt for failing to follow the plan."

"Trial courts are given broad discretion in matters concerning the welfare of children."  Kirshenbaum v. Kirshenbaum, 84 Wn. App. 798, 804, 929 P.2d 1204 (1997). Under the Parenting Act, "the best interests of the child continues to be the standard by which the trial court determines and allocates parenting responsibilities as was true under previous statutory and common law" and "RCW 26.09.184(1) lists the objectives of permanent parenting plans."  In re Marriage of Possinger, 105 Wn. App. 326, 335, 19 P.3d 1109 (2001).

In Kirshenbaum, the dissolution decree and parenting plan vested an arbitrator with authority to make additions or alterations to the parenting plan.  84 Wn. App. at 804-805.  The parenting plan also provided a right to have all dispute resolution decisions reviewed by the superior court.  Kirshenbaum, 84 Wn. App. at 801.  In Kirshenbaum, this court noted that "[o]ne objective of the parenting plan is to provide for

the child's changing needs as the child grows and matures, in a way that minimizes the need for future modifications." Kirshenbaum, 84 Wn. App. at 806 (citing RCW 26.09.184(1)(c)). The court concluded that "the act encourages dispute resolution to avoid the need for judicial intervention," but "[t]he parties have a statutory right of review from any dispute resolution process to a superior court." Kirshenbaum, 84 Wn. App. at 806 (citing RCW 26.09.184(3) and RCW 26.09.184(3)(e)).

Consistent with Kirshenbaum and RCW 26.09.184(4), a court cannot be compelled to enter an arbitration decision that is inconsistent with the mandates of the Parenting Act as Bryan contends. Even though Argosino did not file a motion before the arbitrator to modify her decision or a motion to vacate the decision, the court was within its discretion to hear her opposition to the trial court confirming the arbitrator's decision in its entirety. If we were to adopt Bryan's contention—that the trial court was required to adopt the arbitrator's decision in its entirety—the result could produce parenting plan clarifications that are inconsistent with the Parenting Act and result in an abuse of discretion. Therefore, we conclude that, at the time of confirmation, the trial court retains authority to review the arbitrator's decision for consistency with the Parenting Act, regardless of deadlines dictated in RCW 7.04A for the parties.

Here, the court vested the arbitrator with authority "to consider the following issues: School Enrollment, Direct Communication with the Children, Communication between the parties, Counseling for the Children, Exchanges, Vacations, and Holidays." We address each area of clarification in turn and address whether the trial court abused its discretion by denying Bryan's motion for revision of the commissioner's order.

A. School Enrollment

Bryan contends that the commissioner ignored that Argosino had relocated from the Shoreline School District to the Seattle School District and thus abused its discretion when it did failed to order the children to attend a school in the Shoreline School District. We disagree.

The trial court did not abuse its discretion when it denied Bryan's motion for revision of the commissioner's decision because the commissioner concluded that the Shoreline School District was not open for enrollment and that the children were residents of Seattle School District and had been continuously attending Seattle Public Schools. The commissioner concluded that the issue of school districts was a moot point because the mother was not a resident of the Shoreline School District, and for the commissioner to enroll them would be a modification of the parenting plan because enrollment would have to go through Bryan. Further, on the motion for revision, the trial court concluded that it had to consider Argosino's hardship to transport two children to Seattle School District and two children to Shoreline School District. The trial court did not abuse its discretion when it concluded the children should remain enrolled in Seattle Public Schools.

B. Direct Communication with the Children

Bryan contends that the trial court abused its discretion when it denied the motion for revision and only allowed a "basic phone" because he was biased against Bryan in making this determination.

The trial court did not abuse its discretion when it denied Bryan's motion for revision of the commissioner's decision because the commissioner concluded that

Bryan could have direct communication with the children and could supply a cellphone to the children for that purpose. The commissioner, however, limited the phone to a "simple phone" that could not track the children's movements. The commissioner concluded this limitation was necessary because Argosino is in the address confidentiality program and Bryan should not have the capability of tracking the cell phone's location.[2] Bryan has failed to explain how this restriction is an abuse of discretion, given that Argosino is in the address confidentiality program.

C. Communication Between the Parties

Bryan contends that the trial court abused its discretion when it placed significant limitations on the amount of words per message and the number of messages sent per week because Our Family Wizard has a built in retention for subsequent court review of an offending party's communications and erroneously required Bryan to pay for Our Family Wizard service for one year.

The trial court did not abuse its discretion when it denied Bryan's motion for revision of the commissioner's decision because the commissioner concluded that Our Family Wizard was an appropriate means of communication. The commissioner limited the communication to once per week and limited the word count to 200 words unless there is an emergency. The commissioner determined that these limitations were to encourage only discussion about implementation of the current plan and would limit contact between Bryan and Argosino in accordance with the DVPO. While the built-in retention would allow for subsequent court review, limiting the word count and

---

[2] The commissioner stated, "[t]here's one thing about communication, and then there's another thing about the fear of being stalked. And a person should have the absolute—they actually have a constitutional right to feel secure."

-10-

frequency of communication also limits the need for subsequent court review due to any unauthorized contact. Finally, Bryan has failed to explain how requiring him to pay for one year of Our Family Wizard is an abuse of discretion.[3]

D. Counseling for the Children

Bryan contends that the court abused its discretion when it denied his motion for revision because Argosino made a unilateral decision to keep the children in counseling and that unnecessary counseling should end.

The trial court did not abuse its discretion when it denied Bryan's motion for revision of the commissioner's decision because the commissioner concluded that it was not in the best interests of the children to end counseling sessions. Instead, Bryan was permitted to have contact with the children's counselors. Further, the commissioner concluded that the children benefited from counseling because they had suffered trauma associated with their parents' contentious and abusive relationship and they should continue in therapy to address those issues. Bryan fails to articulate why counseling is not in the children's best interest or how the trial court abused its discretion.

E. Exchanges

The trial court did not abuse its discretion when it denied Bryan's motion for revision of the commissioner's decision because the exchange provision remained unchanged, except that Argosino's eldest daughter was permitted to transport the

---

[3] Bryan contends that the commissioner was biased against him when discussing direct communication with the children. We decline to address this argument because Bryan has failed to show that the decision was an abuse of discretion.

children to exchanges. Bryan fails to address why this provision is not in the best interests of the children, or how the trial court abused its discretion.

F. Vacations and Holidays

The arbitrator's decision addressed points of contention related to vacations and holidays and clarified the parenting plan. Neither the commissioner, nor the superior court made any modifications to the arbitrator's decision relating to vacations and holidays, thus the arbitrator's clarifications were adopted into the final parenting plan.

III.

Argosino requests attorney fees and cost on appeal under RCW 26.09.140. Under RAP 18.1, we may award attorney fees if authorized by applicable law. RCW 26.09.140 provides, "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost of the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." "But if intransigence is demonstrated, the financial status of the party seeking the award is not relevant." Mattson v. Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999).

Argosino filed a financial declaration with this court and contends that Bryan's appeal is frivolous and intransigent. We conclude that Bryan's appeal was intransigent; he failed to properly cite to the record and created unnecessary work for Argosino's attorney and the court. Further, while Argosino did not estimate Bryan's ability to pay in her financial declaration, Argosino demonstrates need. We exercise our discretion and award fees in this case. Subject to compliance with RAP 18.1, we award Argosino with attorney fees on appeal.

IV.

Argosino requests that this court sanction Bryan pursuant to RAP 10.7 because he failed to cite to the record correctly.

RAP 10.7 provides:

> If a party submits a brief that fails to comply with the requirements of Title 10, the appellate court, on its own initiative or on the motion of a party, may (1) order the brief returned for correction or replacement within a specified time, (2) order the brief stricken from the files with leave to file a new brief within a specified time, or (3) accept the brief. The appellate court will ordinarily impose sanctions on a party or counsel for a party who files a brief that fails to comply with these rules.

The court returned Bryan's first brief for correction and his second submission did not cite to the record correctly. Instead, Bryan cited to the sub number assigned by the trial court and not the clerk's papers. Bryan's counsel is admonished to follow the court's rules in future filings or face sanctions.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Brunson, J._          _Leach, J._