**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| In the Matter of the Parentage of: | ) | No. 81810-4-I |
| | ) | |
| ADELE CONLEY RUGH, | ) | |
| | ) | |
| Child, | ) | |
| | ) | |
| MICHELLE CONLEY, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| and | ) | |
| | ) | |
| CHRISTOPHER RUGH, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Christopher Rugh appeals the trial court's order affirming two arbitration decisions interpreting the parenting plan between Rugh and Michelle Conley. Because the superior court did not abuse its discretion, we affirm.

<u>FACTS</u>

Conley and Rugh were dating when Conley gave birth to their daughter, Adele, in May 2015. Conley and Rugh ended their romantic relationship when Adele was approximately six months old. The trial court entered a second amended parenting plan

on April 19, 2019.  The plan provides that Adele resides primarily with Conley and has scheduled visitation with Rugh.[1]  In 2019, Conley moved for clarification of the plan. The trial court denied the motion, finding "petitioner's grievances are requests for substantive changes or grounds for contempt, subject to a motion to modify or enforce, or to appoint an arbitrator."  Both parties appealed, and this court affirmed the trial court in all respects in an unpublished decision.[2]

After additional issues arose between the parties, the trial court appointed an arbitrator to resolve disputes.  The parties first filed for arbitration concerning phone contact between Rugh and Adele.  The parenting plan states:

> The parents shall have similar access to contact with the child, at reasonable times and for reasonable durations. There shall not be more than one telephone call/FaceTime/Skype per day to the child while she is in visitation with the other parent, unless requested by the child.

Rugh argued that the language entitled him to a scheduled nightly call with Adele, whereas Conley contended that the plan caps the calls at once a day but did not mandate them.

The arbitrator issued his decision on March 19, 2020.  The arbitrator determined that the parenting plan did not mandate daily calls, and acted as a "cap, not a floor." The arbitrator determined that "reasonable times and for reasonable durations," entitled each parent to a weekly scheduled phone call with Adele.  The arbitrator noted that this issue will likely lessen over time because as Adele ages she will be able to contact the

---

[1] Adele is scheduled to visit Rugh every other Wednesday after school until Sunday evening, and during the alternate weeks, Wednesday after school until Friday morning.

[2] In re Parentage of Rugh, No. 79195-8-I (Wash. Ct. App. June 22, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/791958.pdf.

non-residential parent if she wishes. After unsuccessfully seeking reconsideration, Rugh appealed the arbitration decision to King County Superior Court.

The parties next sought arbitration concerning summer vacations. The parenting plan provides that Adele alternates summer weeks between the parents with exchanges occurring on Friday mornings. The plan states that until Adele is six years old, each parent may take two non-consecutive one-week vacations with her. After Adele is six years old, the plan allows each parent to take three one-week vacations, two of which may be consecutive. After Adele turns eight, each parent may take four, one-week vacations with her and the weeks may be consecutive. Adele was younger than six at the time of the arbitration.

Rugh contended that the plan allowed him to schedule his time in one-week blocks and that he could tack those weeks onto his existing residential weeks, providing him with three weeks uninterrupted with Adele. Conley contended that the language in the plan limits vacations to one-week periods while Adele is under six. The arbitrator issued a disposition order on July 6, 2020, finding

> 2. Until Adele reaches the age of 8 years old, the first week of a parent's requested vacation time must be congruent with that parent's regular residential week. If a parent is scheduling only one week of vacation, the vacation week simply replaces what would otherwise have been that parent's regular residential week with the child. If the parent is scheduling multiple vacations over the summer, the first week of each vacation block must be congruent with that parent's regular vacation week.

> 3. Under Age 6. Until Adele is 6 years old, a parent may not schedule more than one vacation week consecutively. Consistent with rule 2 above, parental vacation weeks at this age replace a parent's normal residential weeks and shall not be scheduled over the other parent's residential time.

4. <u>Between Ages 6 and 8</u>.  Once Adele is 6 years old, a parent may schedule two of his/her allowed vacation weeks consecutively PROVIDED THAT neither parent may include the final full week of the summer in their scheduled vacation time as doing so could result in the parent getting an unequal amount of residential time over the summer.  In compliance with rule number 2 above, a two-week vacation must commence with a parent's regular residential week.  Immediately following a parent's two-week vacation block, the other parent shall receive the following two weeks of residential time and then the alternating week schedule shall resume.  If there is only one week remaining in the summer after a two-week vacation, then the non-vacationing parent receives only the remaining week.

5. <u>Age 8 and Over</u>.  Once Adele is 8 years old, each parent shall choose any 4 weeks of the summer the parent wishes (with scheduling priority granted as set forth in the paragraph).  Once both parents have chosen their 4 vacation weeks, the remaining weeks shall be awarded on an alternating basis.  The parent who did not have priority for the year shall receive the first available non-vacation week.  In the event that there are an odd number of non-vacation weeks, the excess week shall go to the non-priority parent.

Rugh also appealed the second arbitrator's decision to the superior court.

On August 20, 2020, the trial court affirmed both arbitration decisions.  The court issued an oral and written decision.  The court found that the arbitrator acted within his authority in clarifying "reasonable times for reasonable duration," along with the provision that limited to contact to no more than once a day.  The court found that the arbitrator acted within his authority in clarifying Adele's vacation times based on her age.  The court concluded that the arbitrator's decision was "well-reasoned" and after de novo review, the court adopted and confirmed the ruling.  The court incorporated its oral ruling by reference.  Rugh appeals the trial court's order.

<u>ANALYSIS</u>

We review the trial court's decisions on parenting issues for a manifest abuse of discretion. <u>Kirshenbaum v. Kirshenbaum</u>, 84 Wn. App. 798, 804, 929 P.2d 1204 (1997). The court abuses its discretion if it exercises its discretion based on untenable grounds or for untenable reasons. <u>Kirshenbaum</u>, 84 Wn. App. at 804.

A. <u>Arbitration or Modification</u>

Rugh first argues that the trial court erred in affirming the arbitrator's decisions, because Conley should have presented these issues in a motion to modify the parenting plan instead of arbitration. We disagree.

"A permanent parenting plan may be changed by agreement, by petition to modify, and by temporary order." <u>In re Marriage of Holmes</u>, 128 Wn. App. 727, 734, 117 P.3d 370 (2005). To modify the plan, the court must find a substantial change in circumstances. <u>Kirshenbaum</u>, 84 Wn. App. at 807. A modification occurs when "a party's rights are either extended beyond or reduced from those originally intended in the decree." <u>In re Marriage of Christel & Blanchard</u>, 101 Wn. App. 13, 22, 1 P.3d 600 (2000). A clarification, on the other hand, is "merely a definition of the rights which have already been given and those rights may be completely spelled out if necessary." <u>Christel</u>, 101 Wn. App. at 22 (quoting <u>Rivard v. Rivard</u>, 75 Wn.2d 415, 418, 451 P.2d 677 (1969)).

The decisions here were properly brought through arbitration, rather than motions to modify, because these issues related to the implementation of the parenting plan and the existing party's rights. These arbitration actions fit within the definition of clarification. The arbitrator was not determining the telephone provisions or vacation

-5-

times, but merely helping the parties understand the provisions that the trial court set out.

The parenting plan provides that when the parents "have disagreements about shared decisions or about what parts of this parenting plan mean," the parents will resolve these disputes through arbitration. The parents must use the court designated processes to resolve issues concerning implementation of the plan. RCW 26.09.184(4)(b). Arbitration was the proper avenue to resolve the issues of phone contact and summer vacation.

In Kirshenbaum, the court held that authorizing an arbitrator to suspend visitation rights was proper because the suspended parent still has the right to have the court review of the arbitrator's decision. 84 Wn. App. at 804. This court determined that because the court retained the final and binding authority about termination of parental rights, the court did not abuse its discretion by allowing the arbitrator to temporarily suspend visitation. Kirshenbaum, 84 Wn. App. at 807.

Similar to Kirshenbaum, the arbitrator had the authority to interpret the parenting plan because the aggrieved parent, Rugh, had the opportunity to appeal to superior court for de novo review of these decisions. Rugh did exercise that right, and the trial court affirmed the arbitrator's decisions. Ultimately, Rugh cannot demonstrate why these issues with the interpretation of the parenting plan should have been brought as motions to modify.[3]

---

[3] On reply, Rugh contends that because the judge who denied the motion for clarification called the issues "substantive changes," they should have been brought as motions for modification. He ignores that the judge pointed to arbitration as a remedy, which is the designated dispute resolution in the parenting plan.

B. <u>Right to Parent</u>

Rugh also contends that the arbitrator's decisions on telephone contact and vacation times took substantial, constitutional rights to parent away from him. We disagree.

It is well established that parents have a fundamental liberty interest in the care, custody, and management of their children. <u>In re Welfare of D.E</u>., 196 Wn.2d 92, 102, 469 P.3d 1163 (2020). The Washington Supreme Court has rejected the argument that provisions of a parenting plan can violate one parent's fundamental rights. In <u>King v. King</u>, 162 Wn.2d 378, 385-86, 174 P.3d 659 (2007), the court held:

> The entry of a parenting plan effectuating the legislative purpose of continued parental involvement in the children's lives does not equate to an action where the State is seeking to terminate any and all parental rights and parental involvement with the children, severing the parent-child relationship permanently. . . . a dissolution proceeding is fundamentally different from termination or dependency proceedings. The dissolution proceeding is a private civil dispute initiated by private parties to resolve their legal rights vis-à-vis each other and their children. When children are involved in the marriage, entry of a parenting plan is a statutory requirement. RCW 26.09.050(1). Entry of such a parenting plan does not terminate the parental rights of either parent, but rather allocates or divides parental rights and responsibilities in such a way that they can be exercised by parents no longer joined in marriage. Even where a parenting plan results in a child spending substantially more, or even all, of the child's time with one parent rather than the other, both parents remain parents and retain substantial rights, including the right to seek future modification of the parenting plan. <u>See</u> RCW 26.09.260. As such, the parenting plan divides parental roles and responsibilities, rather than terminating the rights of either parent.

The cases that Rugh relies on to support his argument are inapplicable. Under the clear holding by our Supreme Court, a parenting plan does not terminate or take away one parent's right by dividing the child's time. Rugh's argument fails.

C. Independent Findings

Rugh argues finally that the trial court erred by not entering findings of fact and conclusions of law when affirming the arbitration orders, claiming that the court did not conduct its own analysis. We disagree. The court expressly stated that it conducted a de novo review, and issued oral and written rulings. The court adopted the arbitrator's findings and incorporated its oral rulings in its written decision. Rugh fails to cite authority requiring the trial court to make independent findings of fact.

D. Attorney Fees on Appeal

Conley requests fees under RAP 18.1, for intransigence, and under RCW 26.09.140. Conley contends that Rugh's appeal was frivolous, and he engaged in intransigence. The trial court denied Conley's request for attorney fees, finding no intransigence. We also decline to award attorney fees on appeal.

Affirmed.

_Mann, C.J._

WE CONCUR:

_____

_____