IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of: | No. 86237-5-I |
| ALLAN TERAVAINEN, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| NATALIE ROSE TERAVAINEN[†], | |
| Respondent. | |

DÍAZ, J. — Following a 12-day dissolution trial, the trial court found that Allan Teravainen sexually and physically abused the parties' children. As a result of this finding, the parenting plan requires Teravainen's visitation with the children to be professionally supervised and limited to twice per week. The parenting plan also ordered Teravainen to obtain a sexual deviancy evaluation and the trial court retained jurisdiction over the matter in order to review the parenting plan provisions in light of that evaluation. The trial court considered the evaluation and other

---

[†] We note that at the time the litigation commenced, the respondent was known as Natalie Rose Teravainen. However, she has since changed her name to Natalie Rose Sullivan. As such, we will refer to her in this opinion using her current name.

evidence presented by the parties at a later review hearing and denied Teravainen's request to lift the supervision requirement and liberalize visits. And, following a therapist's recommendation, the court allowed the parties' oldest child to decide whether to participate in future visits with her father.

Teravainen claims that the court abused its discretion and violated his constitutional rights by limiting his contact with his children, based on hearsay and otherwise insufficient evidence, without providing a mechanism to increase visitation and lift the supervision restriction. Teravainen also claims the trial court impermissibly delegated decisions about visitation and abused its discretion by effectively eliminating contact with one of his children. Finding no abuse of discretion or other legal error, we affirm. Each party shall bear their own fees.

## I. BACKGROUND

Teravainen and Natalie Sullivan married in 2014 and had three children together, two daughters, S.R. and S.J., and a son, A.J. The parties separated in May 2020, when S.R. disclosed sexual abuse by Teravainen. Shortly thereafter, Teravainen moved out of the family home and filed a petition to dissolve the marriage.

Child Protective Services (CPS) became involved with the family, investigated the disclosure, as well as numerous subsequent disclosures by S.R. and S.J. of sexual and physical abuse by Teravainen. CPS determined that all allegations were "unfounded," and law enforcement likewise conducted multiple investigations but found no basis for criminal charges. The court appointed a Guardian Ad Litem (GAL), who ultimately recommended that the children reside

primarily with Teravainen based on her "concerns" about Sullivan related to her fixed beliefs that abuse had occurred, the possibility that she was coaching the children, the effect of continual CPS referrals on the children, Sullivan's "level of involvement," and because the children were reportedly better behaved in the father's home.[1] Due to abuse and mental health allegations on each side, the parties stipulated to forensic psychological evaluations.

While the petition to dissolve the marriage was pending, the court initially imposed a temporary residential schedule that provided for the children to live with Sullivan the majority of the time but later increased Teravainen's residential time. At the time of trial in 2023, the children were eight, six, and four years old and the residential schedule in place provided for equal time in each parent's household.

At trial, the court heard testimony from 21 witnesses including both parents, the GAL, two forensic psychologists, multiple CPS employees, two mental health therapists, a domestic violence expert, and a police detective. The court also considered more than 130 exhibits.

In its December 2023 final orders, the trial court found that Teravainen had sexually abused S.R. and S.J. and physically abused all three children. The court relied on the numerous disclosures of S.R. and S.J. to their counselor, "detailed and specific descriptions and drawings," photographs depicting marks and bruising that did not appear to be "normal childhood injuries," an "unrefuted" incident involving pornography, and the court's determination that there was "no evidence

---

[1] The GAL did not conduct home visits or interview the children because she did not believe it was in the children's best interest to do so, given the number of other professionals involved.

3

of coaching." Based on its finding of abuse, the court imposed restrictions required under former RCW 26.09.191 (2021) and limited Teravainen's contact with the children to supervised visitation twice per week, one weekday after-school visit, and a six-hour visit on Saturdays. The court also allocated to Sullivan major decision-making as to education, non-emergency health care, and childcare.

As to Sullivan, the court disagreed with the conclusion of the psychologist who conducted the initial psychological evaluation that Sullivan suffered from a "delusional disorder," but found that she "has a high level of anxiety," an impairment that "sometimes gets in the way of her ability to parent." As a result of this finding, the court ordered Sullivan to continue her engagement in counselling and parent coaching, until the respective providers determine that supportive assistance is no longer needed.

The court also ordered Teravainen to obtain a sexual deviancy evaluation, which would include the evaluator's review of the children's counselor's trial testimony and the exhibits admitted during that testimony. The court required the evaluation to include polygraph testing and "any other testing deemed necessary" and ordered Teravainen to comply with any recommendations resulting from the evaluation. The court retained jurisdiction over the parenting plan for a year "for purposes of reviewing the parenting plan" at a hearing to be set by the parties after Teravainen obtained the evaluation.

Almost a year after entry of the final orders, Teravainen sought review of the parenting plan based on the results of the court-ordered evaluation. The evaluation was largely favorable to Teravainen, noting that he "'passed' a specific

issue polygraph" corroborating his denial of abuse, the evaluation "did not uncover any information which would preclude Mr. Teravainen from having contact with his children," and there was "insufficient evidence" of past or likely future abuse. At the same time, the evaluator noted "significant limitations" of a sexual deviancy evaluation in circumstances where the subject has not been convicted of or admitted to a sexual offense. Specifically, the report stated that actuarial risk assessment tools are the "only empirically valid way" to assess risk of future sexual offense, but those tools could not be applied in Teravainen's evaluation. Based on the report, Teravainen requested that the court "remove the findings about abuse," and enter revised parenting plan provisions that "over time" implement an equally shared residential schedule and joint decision-making. Teravainen also submitted letters indicating that around the time of trial, both daughters denied experiencing sexual or physical abuse.

Following a hearing, the trial court determined that professionally supervised and limited visitation with Teravainen remained appropriate and in the children's best interests. The court noted that it is "unusual for the Court to order visits of any sort with a parent who has abused their child." The court observed that, although the evaluation supported Teravainen's position, it was "limited" by its assumption that Teravainen had not committed a sexual offense and gave no weight to the court's contrary conclusion. The court also determined that the therapists' letters provided no new information because it was clear from the evidence at trial that the children intermittently denied abuse. Finally, the court stated that "any reassuring effect" of the evaluation had to be weighed against the

5

report of the therapist who was then treating both S.R. and A.J. and described how visitation with Teravainen was emotionally difficult for the children.

Accordingly, the court denied the request to remove the supervision requirement and/or otherwise liberalize visitation "until such time as the children's therapist deems such a transition appropriate." And while the court was "not convinced" that visits were currently harmful to the two younger children, the court placed "great weight" on the recommendations of S.R.'s current counselor, and ordered that, going forward, S.R., in consultation with her counselor, could decide whether to attend visits with her father.

Teravainen appeals.[2]

## II. ANALYSIS

A trial court has broad discretion in crafting a parenting plan, and we review those decisions for an abuse of discretion. *In re Marriage of Caven*, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998). This court defers to the "trial judge's advantage in having the witnesses before him or her, which is particularly important in proceedings affecting the parent and child relationship." *In re Welfare of A.W.*, 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). We do "not decide the credibility of witnesses or weigh the evidence" on appeal. *Id*. We review factual findings for

---

[2] As a threshold matter, we deny the mother's request to dismiss the father's appeal on procedural grounds. On December 17, 2024, in his pending appeal of the final dissolution orders, the father filed an amended notice of appeal designating for review post-trial orders entered on December 2 and 3, 2024. This court's records confirm that the notice was served on the mother. On January 21, 2025, a commissioner of this court accepted the amended notice and consolidated review of those orders into the existing appeal. The mother did not object or seek to modify this ruling. The mother's belated objections to timeliness and appealability are hereby denied**.**

substantial evidence. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." *Id.*

The court's discretion in fashioning a parenting plan must be guided by several statutory provisions, including former RCW 26.09.191, which sets forth factors that require or permit limitations on a parent's involvement with the child.[3] *Katare*, 175 Wn.2d at 35-36. Mandatory provisions require the trial court to restrict a parent's time with his or her child and prohibit mutual decision-making if the court finds that a parent has engaged in sexual or physical abuse. Former RCW 26.09.191(1), (2)(a)(ii). The court is permitted, but not required, to limit provisions of the parenting plan if it finds that certain other circumstances exist, including a long-term impairment which interferes with the performance of parenting functions. *See* former RCW 26.09.191(3)(b) (2021).

A.  Child Hearsay

Teravainen claims the trial court violated his constitutional rights by severely restricting contact with his children based on "untested hearsay" statements of his young children, admitted at trial without any special procedure to ensure reliability, such as those required under RCW 9A.44.120. In criminal and dependency proceedings, RCW 9A.44.120(1) allows admission of statements made by children about sexual acts or contact, even if the statements would not otherwise be

---

[3] The legislature recently made significant changes to RCW 26.09.191 that went into effect on July 27, 2025. LAWS OF 2025, ch. 166, § 1. The amendments do not affect our analysis and, in any event, we review the trial court's orders under the prior statute as it was in effect at the time of the trial court's decisions.

admissible under evidentiary rules. Before admitting a child's hearsay statements under this statute, the trial court must conduct a hearing to determine whether there is sufficient indicia of reliability. RCW 9A.44.120(b); *see also State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984) (outlining factors, known as *Ryan* factors, to consider when assessing reliability of child hearsay).

Although several witnesses testified about the children's disclosures at trial, the evidence was primarily admitted during the testimony of Christine de Langen, who provided mental health therapy to S.J. and S.R. from November 2020 up until the time of trial. De Langen testified, without objection, about numerous disclosures the children made in therapy sessions over the course of approximately nine months. The court admitted the statements under ER 803(a)(4), which provides for the admission of out of court statements "made for purposes of medical diagnosis or treatment."

Teravainen does not challenge the trial court's determination of admissibility under ER 803(a)(4). Teravainen also did not object on this basis, argue that RCW 9A.44.120 applied, or advocate for a particular procedure or inquiry prior to admission. Still, Teravainen now contends that the court could not admit the children's out-of-court statements without ensuring a "higher degree of reliability" beyond the applicability of a "mere hearsay exception." This is so, he argues, because the interests in this family law matter are of "equivalent gravity" to the interests at stake in a criminal or dependency proceeding. But Teravainen cites no authority supporting his position that RCW 9A.44.120, or any other evidentiary standard applicable in criminal or dependency matters, applies here. *See DeHeer*

*v. Seattle Post–Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) (holding that when a party cites no authority in support of a proposition, we may assume counsel has found none).

The law is well-settled that parental rights may be subject to limitation where necessary to protect the health or safety of their children. *Wisconsin v. Yoder*, 406 U.S. 205, 233-34, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972). Former RCW 26.09.191(2)-(3) reflects our legislature's recognition of this fact. And again, relevant here, the statute requires the court to place limitations, that may include supervised visitation, on a parent upon a finding of sexual or physical abuse, and authorizes a trial court to eliminate all contact if it finds that limitations will be insufficient to protect the child from harm. Former RCW 26.09.191(2)(a), and (m)(i); *see also In re Marriage of Underwood*, 181 Wn. App. 608, 611-12, 326 P.3d 793 (2014) (holding that former RCW 26.09.191 provides discretion to eliminate all contact between a parent and child in certain circumstances).

Our Supreme Court has specifically held that, in contrast to criminal or dependency proceedings, dissolution proceedings do not implicate "fundamental constitutional rights." *In re Marriage of King*, 162 Wn.2d 378, 388, 174 P.3d 659 (2007). "The entry of a parenting plan effectuating the legislative purpose of continued parental involvement in the children's lives does not equate to an action where the State is seeking to terminate any and all parental rights and parental involvement with the children, severing the parent-child relationship permanently." *Id.* at 385. Parenting plan provisions do not terminate parental rights. *Id.* "Even where a parenting plan results in [children] spending substantially more, or even

9

all, of . . . [their] time with one parent rather than the other, both parents remain parents and retain substantial rights, including the right to seek future modification of the parenting plan." *Id*. at 386; RCW 26.09.260.

"[A] parenting plan that 'complies with the statutory requirements to promote the best interests of the children' does not violate a parent's constitutional rights." *Katare*, 175 Wn.2d at 42 (quoting *In re Marriage of Katare*, 125 Wn. App. 813, 823, 105 P.3d 44 (2004)). Teravainen fails to establish that the trial court failed to comply with the applicable statutory requirements or demonstrate a constitutional violation based on the admission of hearsay evidence.

B.     Abuse of Discretion

Teravainen claims the trial court abused its discretion by imposing a parenting plan that is inconsistent with the legislative intent of certain parenting statutes because it "harshly" restricts contact with his children and provides "no pathway whatsoever" to increase or liberalize visitation in the future. Specifically, Teravainen claims the parenting plan is contrary to RCW 26.09.002, which recognizes the "fundamental importance of the parent-child relationship" and RCW 26.09.187(3)(a), which provides that residential provisions should encourage the maintenance of "loving, stable, and nurturing" bonds with each parent. He also maintains that the parenting plan is inconsistent with the court's stated intent to leave open the future possibility of different residential or visitation provisions because it fails to include specific steps or allow for revision.

But as explained, former RCW 26.09.191 required limitations on Teravainen. And the court's primary purpose and responsibility in establishing a

parenting plan is to provide for the child's physical care, emotional stability, and to further the child's best interests. *See* RCW 26.09.184(1)(a), (b), (g). Even statutes Teravainen relies on emphasize that the overriding purpose of a parenting plan is to protect and provide for the children's best interests. *See* RCW 26.09.002 (directing that parenting provisions should "foster" relationships with both parents, "*unless inconsistent with the child's best interests*"); RCW 26.09.187(3)(a) (outlining various considerations in establishing residential provisions if former RCW 29.09.191 restrictions "are not dispositive").

No authority supports Teravainen's assertion that the parenting plan must include a process for reducing or eliminating restrictions. As a practical matter, nothing in the parenting plan forecloses the possibility of a future modification. *See* RCW 26.09.260(1) (allowing for modification of parenting plans based on a substantial change of circumstances when modification is in the child's best interests). Teravainen fails to establish that the parenting plan is inconsistent with governing statutes or internally inconsistent.

C.    Substantial Evidence

Teravainen contends the court's finding of abuse is unsupported by substantial evidence in the record. Among other things, Teravainen claims (1) it was undisputed that numerous investigations were closed without charges, (2) there was no "medical/forensic" evidence, (3) the children's out-of-court statements bore no "markers of reliability," (4) evidence about "daddy-daughter" pornography was refuted, (5) the children's detailed drawings and statements do not "relate" to him, and (6) the court did not adequately explain its reliance on

11

photographic evidence.

But as discussed, the children's disclosures were admissible. The court found them to be persuasive, noting that the level of detail and specificity were indicative of something that was "experienced." The court noted the "adult" subject matter of some drawings and descriptions, that some details were repeated to a CPS caseworker, and the absence of evidence that the children were coached. The children's disclosures, drawings, and descriptions related to Teravainen because the children consistently identified him as the person who abused them.

And beyond conclusory assertions, Teravainen makes no effort to demonstrate that the statements were unreliable. Considering De Langren's testimony about the context of the disclosures, her relationship with the children, their demeanor and behavior when they disclosed the abuse, the spontaneity of many disclosures, the express assertions of fact, and the lack of apparent motive to lie or misrepresent Teravainen's involvement, the statements bore substantial indicia of reliability. *See State v. Kennealy*, 151 Wn. App. 861, 880, 214 P.3d 200 (2009) (describing *Ryan* factors).

Other evidence corroborated the disclosures, including Sullivan's detailed description of the pornography discovered on a computer used by Teravainen prior to the parties' separation. Teravainen did not testify about it, but according to the post-trial evaluation report, he admitted to the incident and resulting confrontation with Sullivan, but provided an alternative explanation for what Sullivan observed. And, although Teravainen suggests it is unclear why the court relied on the photographic evidence as corroboration, we can infer that the number and extent

of apparent injuries, distinct patterns and placement of bruises led the court to conclude that the photographs were consistent with the children's claims.

Because substantial evidence in the record supports the finding of abuse, Teravainen's reliance on contradictory evidence is immaterial since the trial court's determinations of credibility and persuasiveness are not subject to review. *See A.W.*, 182 Wn.2d at 711.

D.    Order on Review

Teravainen raises two claims related to the court's order following the review hearing. First, relying on *Underwood*, 181 Wn. App. at 613, Teravainen claims the trial court abused its discretion by allowing S.R. to decide whether to attend visits, without finding that former RCW 26.09.191(3) applies, considering legislative policies which favor maintaining parent-child relationships, or entering detailed findings to support its ruling.

In *Underwood*, while the trial court appeared to rely on discretionary authority to eliminate residential time under former RCW 26.09.191(3), the court stated only that the children could decide whether to visit with their father because they were "mature and intelligent" and expressed a preference for no contact. 181 Wn. App. at 610. On appeal, Division Two of this court held that when a court allows a child to decide whether to exercise any residential time with a parent "based solely on the [former] RCW 26.09.191(3) factors," the trial court must "articulate specific reasons" and enter "detailed findings" to elucidate the basis for the decision. *Id.* at 613.

The facts here are different in at least two critical respects: the court ordered

supervised contact in this case, as authorized under former RCW 26.09.191(2), and did not rely on any factors under former RCW 26.09.191(3). Presented with evidence after a year of supervised visits and the children's current circumstances, the court expressly relied on the recommendation of S.R.'s current counselor provided in a November 2024 letter. The letter explained the basis for the therapist's recommendation. The court outlined a process for the therapist to provide frequent updates as to whether S.R. would attend visits or condition them on a particular location. Thus, the record here elucidates the specific reasons for the court's decision. The court did not abuse its discretion in tailoring the conditions of supervised visitation to meet the needs of one of the children in this manner.

As to his second claim, Teravainen contends that the court improperly delegated decisions about visitation to a third party when it declined to alter the visitation provisions "until such time as the children's therapist deems such a transition appropriate." Teravainen's argument relies on this court's decision in *Kirshenbaum v. Kirshenbaum*, 84 Wn. App. 798, 807, 929 P.2d 1204 (1997). In that case, an arbitrator suspended a mother's visitation rights under a provision of a parenting plan that allowed the arbitrator to do so. *Id.* at 801-02. This court held that a trial court had discretion to authorize an arbitrator to suspend visitation rights because the suspended parent retained the right to judicial review of the arbitrator's decision. *Id.* at 807.

The trial court here did not improperly delegate to a third party authority to suspend visitation. *Id*. And, as we noted in *Kirshenbaum*, "[c]ourts frequently rely

14

on the recommendations of mental health professionals in fashioning and making alterations to visitation schedules." *Id*. at 807. Teravainen cites no authority that prohibits the court from indicating that a future decision to alter the visitation provisions will be dependent on the recommendation of the children's treating therapist(s). Nothing in the trial court's statement binds the court or delegates any ultimate or final decision to a third party.

Thus, Teravainen's two claims related to the court's order fail.

E.    Attorney Fees

Both parties request an award of attorney fees and costs on appeal under RCW 26.09.140 and RAP 14.2. RAP 18.1(a) permits a party to request attorney fees and expenses on appeal where applicable law grants them that right. Sullivan also requests fees based on Teravainen's alleged intransigence and because she claims the appeal is frivolous. Although Sullivan has represented herself in this appeal, she is an attorney and this court has explained that lawyers who incur fees representing themselves should be awarded attorney fees where otherwise justified because they must take time from their practices to prepare and appear as any other lawyer would. *Leen v. Demopolis*, 62 Wn. App. 473, 486–87, 815 P.2d 269 (1991).

Sullivan fails to establish any intransigence or abusive conduct related to this appeal. And although Teravainen does not prevail, we do not view his appeal as so devoid of debatable issues as to be frivolous. *See Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010) (holding that an appeal is frivolous if, on review of the entire

record, the appeal presents no debatable issues upon which reasonable minds might differ and is so devoid of merit that there is no possibility of reversal).

Under RCW 26.09.140, an appellate court "may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs" in dissolution proceedings. Exercising our discretion under this provision, and having considered the arguable merit of the issues on appeal, the parties' financial resources and financial needs, we conclude each party shall bear their own fees. *See In re Marriage of French*, 32 Wn. App. 2d 308, 319, 557 P.3d 1165 (2024). But, because Sullivan has prevailed on review, she is entitled to costs under RAP 14.1.

III.    CONCLUSION

Affirmed.

Díaz, J.
_____

WE CONCUR:

Feldman, J.
_____                    _____